### Samuel Richolson v. Maurice T. Moloney.

1. Money Had and Received—*Essentials of the Plaintiff's Case in Action for.*—In actions for money had and received, the plaintiff can not recover unless the evidence shows that the money in justice belongs to him.

2. Practice—*Demurrer to Special Pleas Where the Verdict is for the Defendant.*—Where the verdict is for the defendant, special pleas interposed by him and to which a demurrer has been sustained are out of the case and what has been stated or admitted in them is of no consequence.

Assumpsit, for money had and received. Appeal from the Circuit Court of La Salle County; the Hon. Robert W. Hilscher, Judge, presiding. Heard in this court at the April term, 1901. Affirmed. Opinion filed July 12, 1901.

**Statement.**—This was an action in which the plaintiff sought to recover for moneys alleged to have been had and received by the defendant for the plaintiff's use, also for services claimed to have been rendered by the plaintiff as an attorney at law to the defendant, and also for money laid out and expended by the plaintiff at the instance and request of the defendant.

The plaintiff filed both special and the common counts, to which the defendant interposed a plea of the general issue, and seven special pleas, and also a plea of set-off. Six of the special pleas admit receiving money as alleged in the declaration, and allege that it was received by the defendant as attorney-general of the State, under and by

virtue of acts appropriating certain sums for the legal expenses of the State insurance department, and also by virtue of acts appropriating certain sums for the legal expenses in relation to building, loan and homestead associations, to be expended by the order and under the direction of the attorney-general and not otherwise.

To the special pleas of the defendant the plaintiff demurred, which demurrer was sustained by the court; whereupon the defendant elected to abide by his third, fourth, fifth, sixth, seventh and eighth pleas. To maintain the issue upon his part, the plaintiff introduced the following documents from the office of the auditor of public accounts of the State of Illinois:

"VOUCHER.

SPRINGFIELD, ILL., April 5, 1895.

STATE OF ILLINOIS TO M. T. MOLONEY, Attorney-General, Dr.

To moneys contracted for, advanced and paid out by me, under my order and direction, in the discharge of the duties imposed on me by law, on account of the legal expenses of the insurance department:

| | | |
|---|---:|---:|
| Marshall Drake, for services in looking up testimony, etc., in insurance causes | $ 171 | 59 |
| Leonard Mosness, for services looking up testimony in insurance causes | 100 | 00 |
| To rent of office in Ashland block, Chicago, solely on account of insurance causes, for January, February, March and April, 4 months, at $35 per month | 140 | 00 |
| To rent of office on same account from May 1, 1894, to May 1, 1895, 12 months, at $75 per month | 900 | 00 |
| Joseph Culkin, clerk and stenographer, 16 months, at $40 per month | 640 | 00 |
| Incidental expenses of said office from January, 1894, to April 1, 1895 | 200 | 00 |
| To Samuel Richolson for services in attending to insurance cases in Chicago and Peoria, from the 1st of July, 1893, to the 1st of April, 1895, at $20 per day, as per contract | 4,000 | 00 |
| | $6,151 | 59 |

UNITED STATES OF AMERICA, } ss.
    State of Illinois.         }
ATTORNEY-GENERAL'S OFFICE.

I, M. T. MOLONEY, Attorney-General, do hereby certify that the foregoing bill of M. T. Moloney, Attorney-General, is correct, and is payable from the appropriation for the legal expenses of the insurance department.

                    M. T. MOLONEY, Attorney-General.
    Approved by me this 22d day of June, 1895.
                    JOHN P. ALTGELD.

AUDITOR'S OFFICE, ILLINOIS.
        SPRINGFIELD, June 22, 1895.                    $6,151.59
    Pay to M. T. MOLONEY, Attorney-General, or order, six thousand one hundred fifty-one and 59-100 dollars, for moneys contracted for, advanced and paid out by Attorney-General, on account of legal expenses of insurance department.

                    DAVID GORE,
                    Auditor of Public Accounts.

            SPRINGFIELD, ILL., Sept. 7, 1895.
STATE OF ILLINOIS to M. T. MOLONEY, Attorney-General, Dr.
To moneys advanced for legal and incidental expenses incident to the discharge of his duties in relation to the insurance laws of the State, from July 1, 1895 .................................. $950 00

                    BILL OF PARTICULARS.
To office rent in which to attend to said business in
    Chicago, for July, August and September, 1895..$300 00
To stenographer to attend to said work for July,
    August and September ...................... 150 00
To services to Samuel Richolson in attending to
    said work to September 1, 1895 ............... 500 00
                                               ————————
        Total ............................. $950 00

I, M. T. MOLONEY, Attorney-General, do hereby certify that the foregoing bill of M. T. Moloney, Attorney-General, is correct and is payable from the appropriation for the legal and incidental expenses of the insurance department.

                    M. T. MOLONEY, Attorney-General.
    Approved by me this 7th day of September, A. D. 1895.
                    J. P. ALTGELD, Governor.

AUDITOR'S OFFICE, ILLINOIS.                    No. 11,671.
        SPRINGFIELD, Sept. 9, 1895.                    $950.00
    Pay to M. T. MOLONEY, Attorney-General, or order, nine

hundred and fifty dollars, for moneys advanced for legal and incidental expenses in relation to the insurance laws, account Attorney-General.

DAVID GORE,<br>Auditor of Public Accounts.

106                     SPRINGFIELD, ILL., Nov. 9, 1895.
STATE OF ILLINOIS to M. T. MOLONEY, Attorney-General, Dr.

To moneys contracted for, advanced and paid out by and under my order and direction, in the discharge of the duties imposed on me by law, on account of the legal expenses of the insurance department:

To the services of Samuel Richolson, from September 1st to November 1st in connection with the
work in insurance matters, 50 days at $20.00 .... $1,000  00

To the services of George E. Bacon, in connection with the work in insurance matters, from September 1st to November 1st .................     350  00

                    Total ............................. $1,350  00

UNITED STATES OF AMERICA, |
       State of Illinois.  } ss.
ATTORNEY-GENERAL'S OFFICE.

I, M. T. MOLONEY, Attorney-General, do hereby certify that the foregoing bill of M. T. Moloney, Attorney-General, is correct, and is payable from the appropriation for the legal expenses of the insurance department.

M. T. MOLONEY, Attorney-General.<br>M. L. NEWELL, Asst.

Approved by me this 9th day of November, A. D. 1895.

JOHN P. ALTGELD, Governor.

107   AUDITOR'S OFFICE, ILLINOIS.              No. 12,989.
      SPRINGFIELD, Nov. 9, 1895.              $1,350.00

Pay M. T. MOLONEY, Attorney-General, or order, thirteen hundred and fifty dollars, for moneys paid Samuel Richolson and Geo. E. Bacon for services on account legal expenses of insurance department, account office of Attorney-General.

DAVID GORE,<br>Auditor of Public Accounts.

108                     SPRINGFIELD, ILL., Sept. 28, 1895.
STATE OF ILLINOIS to M. T. MOLONEY, Attorney-General, Dr.

To moneys contracted for, advanced and paid out by me, under my order and direction, in the discharge of the duties imposed on me by law, on account of the legal expenses of the insurance department:

To office rent, for month of June, 1895.........$   75 00
To services of Samuel Richolson from April 1,
  1895, to July 1, 1895, in connection with the
  work in insurance matters, 78 days, at $20.00.. 1,560 00
Daily Law Bulletin.............................   19 00
To services of stenographer for April, May and
  June, in Chicago.............................  150 00
                                                 _____
          Total.......,......................$1,804 00.

UNITED STATES OF AMERICA, )
      State of Illinois.   } ss.
ATTORNEY-GENERAL'S OFFICE.

I, M. T. MOLONEY, Attorney-General, do hereby certify that the foregoing bill of M. T. Moloney, Attorney-General, is correct, and is payable from the appropriation for the legal expenses of the insurance department.

M. T. MOLONEY, Attorney-General.

Approved by me this 28th day of September, A. D. 1895.

J. P. ALTGELD, Governor.

R. K. DURFEE,
Insurance Superintendent.

109 AUDITOR'S OFFICE, ILLINOIS.              No. 12,117
        SPRINGFIELD, Sept. 28, 1895.            $1,804.00
Pay M. T. MOLONEY, Attorney-General, or order, eighteen hundred and four dollars, for moneys paid, etc., on account legal expenses of insurance department.

DAVID GORE,
Auditor of Public Accounts.

To the State Treasurer of the State of Illinois.
Countersigned and registered.

HENRY WULFF, State Treasurer.

110                    SPRINGFIELD, ILL., Dec. 23, 1895.
STATE OF ILLINOIS to M. T. MOLONEY, Attorney-General, Dr.

To moneys contracted for, advanced and paid out by me, under my order and direction, in the discharge of the duties imposed on me by law, on account of the legal expenses of the insurance department:
To the services of Samuel Richolson from November 1, 1895, to January 1, 1896................$500 00

UNITED STATES OF AMERICA, )
      State of Illinois.   } ss.
ATTORNEY-GENERAL'S OFFICE.

I, M. T. MOLONEY, Attorney-General, do hereby certify that the foregoing bill of M. T. Moloney, Attorney-General,

is correct and is payable from the appropriation for the legal expenses of the insurance department.

M. T. Moloney, Attorney-General.

Approved by me this 23d day of December, A. D. 1895.

John P. Altgeld, Governor.

Auditor's Office, Illinois.                    No. 13,644.

SpRINGFIELD, Dec. 2nd, 1895.              $500.00

Pay M. T. Moloney, Attorney-General, or order, five hundred dollars for services of Samuel Richolson, Nov. 1, 1895, to Jan. 1, 1896, in relation to insurance laws, duties performed.

David Gore,
Auditor of Public Accounts.

To the State Treasurer of the State of Illinois.

Countersigned and registered.

Henry Wulff, State Treasurer.

112              Springfield, Illinois, 6th Aug., 1896.

State of Illinois to M. T. Moloney, Attorney-General, Dr.

To moneys contracted for, advanced and paid out by me, under my order and direction, in the discharge of the duties imposed on me by law, on account of the legal expenses of the insurance department.

To the services of Samuel Richolson, from Jan. 1, 1896, to Aug. 1, 1896......................$2,000.00

United States of America, } ss.
     State of Illinois.        }

Attorney-General's Office.

I, M. T. Moloney, Attorney-General, do hereby certify that the foregoing bill of M. T. Moloney, Attorney-General, is correct and is payable from the appropriation for the expenses of the insurance department.

M. T. Moloney, Attorney-General.

Approved by me this 6th day of August, A. D. 1896.

John P. Altgeld, Governor.

Auditor's Office, Illinois.                    No. 17,666.

Springfield, Aug. 6, 1896.              $2,000.00

Pay M. T. Moloney, Attorney-General, or order, two thousand and no-100 dollars for services of Samuel Richolson, to Aug. 1, 1896, account insurance laws, office of Attorney-General.

David Gore,
Auditor of Public Accounts.

To the State Treasurer of the State of Illinois.

Countersigned and registered.

Henry Wulff, State Treasurer.

The defendant admitted that the amount set forth in the orders drawn by the State Auditor upon the State Treasurer were severally paid to the defendant. It also appeared in evidence that of the above warrants, warrant 12,117 was paid from the appropriations for 1893, and warrant 11,671 was paid from the appropriation of 1895. The defendant, in his own behalf, as to these vouchers testified as follows:

" Q. Was there any vouchers drawn by you, or under your direction, sent there by your stenographer, or any other person on earth, that any other official refused to approve? A. I do not know of any. When I made out the voucher, dated April 5, 1895, and made out this item, ' To Samuel Richolson, for services in attending to insurance cases in Chicago and Peoria, from the 1st of July, 1893, to the 1st of April, 1895, at $20.00 per day, as per contract, $4,000," and certified to by me as follows—'I, M. T. Moloney, Attorney-General, do hereby certify that the foregoing bill of M. T. Moloney, Attorney-General, is correct, and is payable from the appropriation for the legal expenses of the insurance department'—when I made this bill of particulars and voucher it was not true. I knew it was false, so far as he was concerned, yes, sir, but I had already paid out the money. My certificate to that voucher was false so far as that payment to him was concerned. It is not false as to a part. It is false so far as that is concerned. The voucher dated September 7, 1895, same answer to that as to the last. So far as the certificate covers that item it was false. My certificate in that voucher that there was due to Samuel Richolson for attending to work in the insurance department, in the sum of $500, was false. The voucher of September 28, 1895, was false except as to whatever he had earned, actually in the department, which I never divided up. Of course it would not be so far as he had done anything. The voucher and certificate dated September 9, 1895, certified as aforesaid, was false, except in the sense that whatever he had done, would be entered into it, little or much, and that applies to each and every one of them, of course, because I never separated it. The voucher and certificate of December 23, 1895, was false so far as he was concerned, except whatever work he had done in the insurance department. The statement of the services of Samuel Richolson in insurance matters of September 1, to November 1, 1895, fifty days, was false so far as that was concerned. The statement for services of

Samuel Richolson, from April 1, 1895, to July 1, 1895, seventy-eight days, was false.    The voucher and certificate of August 6, 1896, to the services of Samuel Richolson from January 1, 1896, to August 1, 1896, $2,000, is not true so far as that is concerned."

The defendant in explanation of how he came to render the aforesaid bills to the auditor, testified :

" From time to time, during the latter part of 1893, and in 1894, I stated to Mr. Richolson what my difficulties were with B. K. Durfee, the superintendent of insurance of this State, and with John P. Altgeld, then governor.    I said to Mr. Richolson and to Mr. Scofield that I was getting tired of advancing money out of my pocket for the State of Illinois.    A year and a half had expired since the appropriation of 1893 had become available, and yet I was not permitted by Mr. Durfee or by Mr. Altgeld to draw one penny of it; that Mr. Durfee and the governor contended that Durfee should control it and not me; that the governor would not approve of any bill unless Mr.Durfee would certify to it.    I told Mr. Richolson and Mr. Scofield that I had expended large amounts, as he knew I had, both to himself and others; that I was deprived of these sums and that I was getting tired of it.    Mr. Richolson then said to me, in order to obviate everything that has been said by Mr. Durfee, and in order that he can have no possible excuse, as you have paid out this money, draw the voucher in my name; as I am an attorney, draw it in that manner, and put it in as a *per diem*, or as you see fit, so as to cover the amounts of money that you have expended; that will obviate the objection of Mr. Durfee.    That was the only thought ever entered my mind in the drawing of the money in the way I did.    I afterward made out that bill, presented it, and obtained the money in that way.    At that time I had not had any contract or any talk with Mr. Richolson about a contract by which he should render services for the insurance department.    Up to the time that bill was rendered, the only services Mr. Richolson had rendered in the insurance department under my direction, were that in November, 1894, I sent him to Peoria in the Prairie State Association case—I think that is the name of the case; another case was that of The People v .Brown, an insurance case in Peoria.    Those were all the cases that he ever left the city of Chicago or Ottawa for any insurance matter, in any part of this State, except in a few matters

in Chicago. I think $50 a day would be a reasonable charge, including expenses; the expenses of travel, I mean, would be in addition to that. I requested Mr. Richolson to prepare a declaration in what was known as the Lloyd's case in Chicago. He drew a number of counts, but they all went to the point directly opposite to what I told him. I have no recollection of his ever afterward attending to any matters of insurance, except one. It was the writing of an order to issue a capias to arrest the body of one Chapeck. I do not think such services were worth practically anything. I never made payments to him expressly on insurance matters. He did not render in connection with the work in insurance matters service for seventy-eight days at $20 a day, nor at any other price, nor did he at any time, in connection with the work in insurance matters render service fifty days at $20 a day, nor did he render any of the services mentioned in these bills, except what I have heretofore mentioned as to work done by him in two cases in Peoria, drawing some counts of a declaration, and an order for a capias. His services in the insurance cases were not of the value of more than $150."

Defendant further testified :

" I state that the actual service of the plaintiff in insurance cases, that was worth anything to the State, was not more than two days, although it may be, judging from what he told me, that he worked altogether in the insurance cases, as much as ten or twelve days."

Defendant also testified that he had paid the plaintiff a sum less than $8,000, by note $100. Plaintiff denied having received more than $2,930. A number of lawyers testified, that, accepting plaintiff's statement of the work performed by him in a foreclosure case of Moloney v. White, the services of the plaintiff therein were worth from $450 to $500. The defendant testified that he had, before he became attorney-general, performed certain legal services for the plaintiff, and that the plaintiff offered to reciprocate in kind; that in giving the defendant the White mortgage to foreclose, he told him that the mortgage provided for a solicitor's fee of $100, and that if the property sold for enough to satisfy the mortgage he could have the $100 solicitor's fee; that the property did not sell for enough to satisfy the mortgage, there being a deficiency of over $500.

Mr. Scofield, an attorney, one of the assistants of the attorney-general in his office, testified that four or five hundred dollars would be a liberal estimate for all the work done by Mr. Richolson in the insurance department.

Mr. Mosness, an attorney, testified that he had charge of the insurance cases, and that the only thing he knew of the plaintiff's doing in such cases, was his helping Mr. Scofield in the Lloyd's case in looking up authorities; that he may have been occupied in this way three or four days; that he drew in the Chapeck case an order for a capias, which was an order five or six lines in length; that at another time when he and Mr. Scofield were sitting in the office, Mr. Richolson came in and asked him if he could sit down in his place; that Mr. Mosness got up from the chair and he sat down and took up a pen and made some minutes and filled out a declaration, and said he thought it would be a good idea to have some of his ear-marks on the papers so that he could make a showing; that his work at that time was only a matter of half an hour; that these are the only insurance matters he ever knew that the plaintiff had any connection with in the office.

At the close of the evidence introduced by the defendant and prior to the rebuttal evidence, the plaintiff entered a *nolle prosequi* to all matters in issue, except on the counts for money had and received by the defendant to the plaintiff's use, and the services rendered by the plaintiff to the defendant in the foreclosure case of Moloney v. White, and in the said insurance matters. The jury rendered a verdict for the defendant, upon which there was judgment; from such judgment the plaintiff prosecutes this appeal.

B. F. RICHOLSON and WILLIAM L. SEELEY, attorneys for appellant, contended that the count for money had and received may, in general, be proved by any legal evidence showing that the defendant has received or obtained the money of the plaintiff, which, in equity and good conscience, he ought not to retain. 2 Greenl. on Ev., Sec. 117; Alderson v. Ennor, 45 Ill. 128; Taylor v. Taylor, 20 Ill. 650; 2 Saund. Pl. & Pr., Part 1, 350.

When a party in his pleading makes an admission, the admission so made is not only for that purpose, but for every purpose; and he will be estopped afterward, although in another action between the said parties, from pleading the same matter. (1 Saund. Pl. & Pr., Sec. 60.) Whatever is admitted on the record need not be proved and can not be disproved. See Id., Sec. 62, and Gould's Pl., Ch. 3, Sec. 168.

The defense, if it is a defense, that the said moneys had been delivered to the defendant under an illegal contract or understanding, might, and, in fact, ought to be specially pleaded, for the receipt of the money, for the particular use alleged in the declaration, is admitted and the defendant relied upon matters of avoidance for a defense. 2 Saund. Pl. & Pr. 397–398; Gould's Pl., Chap. 6, Pt. 1, Secs. 40 to 52.

After having abided by his pleas, to the counts for money had and received, the defendant was precluded from interposing the same defense, or a like defense, upon the trial of the cause; and it was error in the trial court to permit the defendant to introduce testimony in respect to the defense set up in said pleas or a defense similar thereto. Dana v. Bryant, 1 Gil. 104; Gould's Pl., Chap. 3, Secs. 167–168; Stephen's Pl. 219, 220; Wells v. McClenning, 23 Ill. 409.

It having been admitted by the pleas to the counts for money had and received, as a fact, that the State of Illinois, by its executive officers, audited the bills rendered to it, for the plaintiff's services to the State, and delivered the said moneys in payment of said bills to the defendant, for the plaintiff's use, that particular fact, admitted on the record, need not be proved and can not be disproved or contradicted. Gould's Plead., Chap. 3, Sec. 168; 1 Saund. Pl. & Pr., Secs. 60–62; 1 Chitty's Plead., Secs. 600, 601.

The judgment sustaining the plaintiff's demurrer to the defendant's pleas in confession and avoidance, to the counts for money had and received, is equally conclusive as a verdict would have been upon the matters set forth in the said pleas, and the defendant, in abiding by his said pleas, was precluded from referring the facts admitted by the said

pleas to the country, to be differently found by the jury, and the court below erred in submitting testimony in support of the allegations of said pleas, to the jury upon the trial of said cause. " One party can not have a judgment upon the law and the other party upon the fact of the case." Ward v. Stout, 32 Ill. 399; Wells v. McClenning, 23 Ill. 409; Gould's Plead., Ch. IX, Pt. 1, Secs. 43, 44.

The defendant did not introduce any testimony to sustain his traverse of the counts for money had and received, and, in the absence of such proof, the said admissions of record, that said moneys were received by the defendant to the plaintiff's use, became absolute, and the plaintiff is entitled to a judgment. No plea which admits the truth of the declaration can be said to amount to the general issue; therefore the issue formed by the demurrer to the special pleas of the defendant, and his abiding by his said pleas, determined that issue, in law, conclusively against the defendant. See Gould's Pleading, Chap. VI, Part 1.

THOMAS A. MORAN, CHAS. J. SCOFIELD, JAMES J. CONWAY and L. W. BREWER, attorneys for appellee.

In an action for money had and received, the plaintiff can not recover unless the evidence shows that the money in justice belongs to him, and that in justice and right the defendant ought to pay it over to him. Harrison Machine Works v. Coquillard, 26 Ill. App. 513; O'Brien v. O'Brien, 75 Ill. App. 263; 2 Ency. of Pleading & Practice, 1027-28; Alderson v. Ennor, 45 Ill. 128; Allen v. Stenger, 74 Ill. 119; Chitty on Contracts, 474; First Nat. Bk. v. Gatton, 71 Ill. App. 323 to 327; Taylor v. Taylor, 20 Ill. 650; Belden v. Perkins, 78 Ill. 449; 2 Greenleaf " On Evidence," Sec. 117; Eddy v. Smith, 13 Wend. 489; Dale v. Sollet, 4 Burrows (King's Bench), 2133; Clark v. Dignan, 3 M. & Well. (Exchequer), 478.

The money received by defendant from the State never was earned by the plaintiff and never belonged to him. He therefore can not maintain the action to recover it. Trumbull v. Campbell, 3 Gil. 502; Atteberry v. Jackson, 15 Ill. App. 276.

MR. JUSTICE WATERMAN delivered the opinion of the court.

The plaintiff, in his argument, refers to admissions he claims were made by the defendant in the special pleas filed by him, and insists that as his demurrer to such pleas was sustained the defendant is estopped from denying what he stated in such pleas. In this State, a defendant is permitted to file inconsistent pleas. What reasons actuated the court in sustaining the demurrer to the pleas is immaterial. The defendant elected to stand by his pleas, and to rely on the trial upon the general issues interposed by him. For the purposes of the trial, the special pleas interposed by the defendant, to which a demurrer was sustained, were out of the case. Had there been a verdict for the plaintiff, the defendant might then have urged that the court erred in sustaining such demurrer, and that he, the defendant, was thereby precluded from making a defense which he otherwise would. As it is, the verdict being for the defendant, what was stated or admitted in these unsworn special pleas is of no consequence. The plaintiff testified that the testimony of the defendant, that he consented to the form and manner in which the defendant's bills presented to the auditor of public accounts were made out, was entirely false; that he never made any suggestions whatever in respect thereto, and had neither notice, knowledge nor intimation that any of the bills had been made out as they were until long after the bills had been paid. The plaintiff insisted at the trial, and insists now, that the bills presented by the defendant to the auditor of public accounts, and paid out of the State treasury, show that the defendant received $9,600 from the State treasurer for the use and benefit of him, the plaintiff; that the defendant was and is estopped to deny the truth of what was represented by him in the accounts he presented, and from denying that he received for the use and benefit of the plaintiff the various sums mentioned therein, as claims made on account of the services of the plaintiff; and the plaintiff in his argument in this court says:

"No effort, however, was made by the plaintiff to litigate the question as to whether or not the said services had been fully paid for, nor whether any portion of said payments should be applied upon the services mentioned in said vouchers, because the plaintiff's position is that the defendant was bound by law to pay over to the plaintiff the money which he had received for the plaintiff's use, and that he was precluded from setting up as a defense that the money, or any part thereof, belongs to the State.  No testimony was therefore introduced by the plaintiff as to the value of his services, whether rendered in insurance cases, in homestead, loan, or building association cases, in court of claims cases, or in so-called trust cases, but he rested his case, so far as the count for money had and received was concerned, upon the proof showing the auditing of his said accounts by the executive officers of the State as being correct, and a certificate of the defendant that such money was due from the State to the plaintiff, and the admission of the defendant that he had received said moneys and had refused to pay them over to the plaintiff."

The plaintiff's further contention—that the question sought to be raised by the defendant, that the moneys aforesaid were not fully earned by the plaintiff in the particular department mentioned, and consequently were not all due the plaintiff—was, and is, a question to be determined between the plaintiff and the State, a question in which the defendant is in no wise legitimately concerned; that the said question can be determined only when the moneys shall have been paid over to the plaintiff, unless the defendant is in a position to file a bill of interpleader and bring the money into court to be disposed of as between the plaintiff and the State by the decree of the court.

The plaintiff rested his case in chief, upon the introduction of the vouchers and orders hereinbefore set forth, the admission of the defendant that he had received the moneys called for by the said orders upon the state treasurer, and testimony as to the services by him rendered for the defendant in the foreclosure suit of Moloney v. White, and evidence as to what such services were reasonably worth.

Although at the conclusion of the plaintiff's case in chief,

no motion to take the case from the jury or to instruct them to find a verdict for the defendant upon the count for money had and received was made, yet it is not out of place, in view of the plaintiff's contention, to consider whether the plaintiff did, by the testimony introduced by him, make a *prima facie* case as to anything except the service by him rendered to the defendant in the foreclosure case of Moloney v. White. That is to say, did he make a *prima facie* case on which he was entitled to recover any of the moneys received by the defendant upon the orders on the state treasurer introduced in evidence. The first account, dated April 5, 1895, rendered by the plaintiff is:

" STATE OF ILLINOIS

To M. T. MOLONEY, Attorney-General, Dr.

To moneys contracted for, *advanced and paid out by me* under my order and direction in the discharge of the duties imposed on me by law on account of the legal expenses of the insurance department."

Which account contains, among other items, this:

" To Samuel Richolson, for services in attending to insurance cases in Chicago, and Peoria from the first of July, 1893, to the first of April, 1895, at $20 per day, as per contract, $4,000."

The order drawn in satisfaction of such account is:

" Pay M. T. Moloney, Attorney-General, or order, $6,-151.59 *for moneys contracted for, advanced and paid out by attorney-general* on account of legal expenses of insurance department."

There is neither in the bill rendered nor in the order given in satisfaction thereof, anything showing that either the auditor or the governor understood that the $4,000 mentioned therein was a sum of money which defendant was to receive for the purpose of paying the same over to the plaintiffs. The representation by the attorney-general, the defendant, in presenting such bill, was that he had already paid to Samuel Richolson, $4,000 for services by him rendered in insurance cases. The plaintiff had no account with the State of Illinois. It was not indebted to him. The appropriation made by the legislature in 1893 was:

· " To the auditor of public accounts for the expenses of the insurance department of his office, the following: * * * For the legal expenses of the insurance department, to be expended by the order and under the direction of the attorney-general of the State, the sum of $4,000 per annum."

The appropriation of 1895 was:

" To the attorney-general for an assistant, the sum of $2,500 per annum; for a second assistant, the sum of $1,800 per annum. * * * To the attorney-general for telegraphing, postage and other necessary expenses incurred in the discharge of the duties of the office, a sum not to exceed $2,000 per annum for legal and other incidental expenses incident to the discharge of his duties in relation to the building loan and homestead associations, a sum not to exceed $3,000 per annum; for the legal and other expenses incident to the performance of his duties in relation to the insurance laws, a sum not to exceed $6,000 per annum, payable on bills certified to by him, and approved by the governor."

None of the orders drawn by the auditor were in satisfaction of any claim against the State by the plaintiff. The plaintiff's name, like the names of other parties, appears in the account for the purpose of showing in what manner the attorney-general had agreed to, or had actually expended the appropriation under his control, like the items for rent and for incidental expenses. The name of the plaintiff was inserted only for the purpose of giving detailed information to the auditor as to in what manner the appropriation of which the attorney-general had control had been or was to be expended.

If the plaintiff did, by reason of his employment so to do, render service in cases in which the attorney-general represented the State, his claim for remuneration therefor was against the attorney-general and not the State. Doubtless the attorney-general might have rendered to the auditor an account for legal services by the plaintiff rendered and for moneys by him earned therefor which had not been paid, and he might have asked the auditor for an order on the State treasurer within the limits of the appropriation, to enable him, the defendant, to pay the plaintiff for such

services.so rendered; and upon such bill, if found to be correct and the matters therein stated to be true, the auditor might have drawn his warrant in favor of the defendant in order that he might pay the plaintiff what, for such service, was due him. But the auditor, under the appropriations, could not legally have drawn an order directing the state treasurer to pay directly to the plaintiff, because there was no appropriation to the plaintiff, and the state treasurer could properly pay only upon the receipt, or order of the person to whom the appropriation was made.

The language of some of the vouchers is variant from that of the one already commented upon, but each of them was a representation to the auditor by the attorney-general that the latter had already paid the plaintiff the money which the defendant, as attorney-general, was asking the auditor to give him an order on the state treasurer for. So far as appears from the bills rendered and the orders given, the defendant received all the money paid by him to the state treasurer for his own benefit and behoof, and none of it for the use and benefit of the plaintiff. The vouchers and orders were properly admitted in evidence. This done, it was for the plaintiff to show that he had rendered the services to the attorney-general, as such, described in the various accounts presented. The plaintiff did show, it was undisputed, that he had rendered to the attorney-general as such, some service in the business of the State. Whether he had been paid therefor, and what amount, under his employment by the attorney-general as such, he was entitled to receive, were questions to be submitted to the jury.

The case is in some respects peculiar. According to the evidence introduced by the defendant, and his own testimony, there was no contract for the payment of any specific sum or *per diem* to the plaintiff for the work he did, and the entire value of the services rendered by him to the State can not have exceeded $500; according to the testimony of the defendant himself, a much less sum. While in the personal matter of the defendant, the foreclosure suit of Moloney v. White, according to the testimony of

Richolson v. Moloney.

the defendant, the plaintiff is entitled to nothing, nor does the plaintiff for his services in such case claim more than $500. Yet, the defendant testifies that he has paid to the plaintiff for his legal services a sum equal to $8,000 by less than $100—in other words over $7,900. Under the evidence introduced by the defendant, and his own testimony as to the entire services rendered by the plaintiff, both for the State and the defendant, personally, for what was paid the sum of more than $7,000—to which, according to the testimony of the defendant, the plaintiff was in no way or wise entitled ?

It is quite true, as is contended by plaintiff, that in an action for money had and received a bailee can not avail himself of the title or ownership of a third person although that person be the true owner, and that a bailee can set up the title of another only if he holds upon the right and title and by the authority of that other. The Idaho, 93 U. S. 575; Western Transportation Co. v. Barber, 56 N. Y. 544; Thorne v. Tilbury, 3 H. & N. 543.

Nor can one who has received money for the use of another defend against the claim of such person upon the ground that there was some irregularity in the proceedings under which the money was obtained; so a tax collector can not retain money by him collected because the tax was irregularly imposed and irregularly assessed. Ross v. Curtis, 31 N. Y. 606; Morris v. State, 47 Texas, 583.

Nor can an agent who has received money belonging to his principal upon the sale of goods irregularly passed through the custom house without the duty having been paid, set up such a defense when sued by his principal.

The present case does not come within any such rule, but within the well known principle that in an action for money had and received the plaintiff can not recover unless the evidence shows that the money in justice belongs to him. Taylor v. Taylor, 20 Ill. 650; Allen v. Stenger, 74 Ill. 119; Beldon v. Perkins, 78 Ill. 449; Eddy v. Smith, 13 Wendell, 489; Clark v. Dignan, 3 Meeson & Welsby's Exchequer, 478; Watson v. Wolverton, 41 Ill. 241.

The difficulty with the plaintiff's position is, that however clearly he may have shown that the money received by the defendant from the State does not belong to him, he has not shown that in equity and good conscience it belongs to Samuel Richolson.

Nor would the plaintiff's position be any better if it were the case that the accounts presented by the defendant to the State auditor, instead of being in the language they are, had read, "For money contracted to be paid and now due to Samuel Richolson for legal services by him rendered under the employment of the attorney-general." The contention would then, as now, be, what has the plaintiff done to entitle him to receive this money, either from the State or from the defendant?

The position taken by the plaintiff is really this: The defendant perpetrated a fraud upon the auditor and the State of Illinois, and obtained by false representations from the latter the sum of $9,600. The defendant falsely represented that I had earned and that such money was due me, and by such false representation obtained this large sum. Because of the successful false and fraudulent use of my name by the defendant to obtain money, I, as against the defendant, am entitled to take advantage of and profit by his fraud and iniquity.

We are not aware of any case in which it has been held that an innocent party can thus profit by the turpitude of another.

In stating the attitude occupied by the plaintiff, we do not wish to be understood that he concedes that the defendant did not really owe him the money which he obtained by the use of his name. The plaintiff does declare that he earned and is entitled to much more than he received from the defendant, but his insistence in this action in the court below was, and now is, that it was not necessary for him to prove that he had done any work for the attorney-general as such, that the mere fact that the attorney-general presented the bills and obtained the money he did, without, as plaintiff claims, any knowledge of or connivance,

upon his part, at the fraudulent representations of the plaintiff, is sufficient to entitle him to recover from the defendant the moneys so, under such circumstances, received by him.

Nor does the plaintiff deny but that the State of Illinois may have a claim superior to his, to these moneys. He only insists that such superior claim, if any, of the State, can not be considered in this action.

As before stated, we do not agree with plaintiff in his contention. The jury were fairly instructed as to the issues presented by the pleadings, and in the record we find no error warranting a reversal.

The judgment of the Circuit Court is therefore affirmed.