### CRAIGHEAD et al. v. MYERS.

No. 21086. Opinion Filed Nov. 11, 1930.

Carlile & Moore, for plaintiffs in error.

Watts & Wall, for defendant in error.

BENNETT, C. J. M. Myers commenced this suit in justice court at Vian in Sequoyah county, Okla., against the defendants Harve Craighead et al., for the recovery of a cow and calf and sued out at the beginning of the action a writ of replevin under which the property was taken from the defendant Craighead who made a redelivery bond and repossessed himself of the property.

At the trial before the justice there was a verdict and judgment for the plaintiff from which the defendants appealed to the district court by the filing of a duly approved appeal bond. On September 16, 1929, the case came on for trial before the district court and the parties and their counsel appeared, announced ready for trial, and introduced their evidence before the court and jury.

At the conclusion of the evidence, the trial judge upon his own motion dismissed the appeal and issued an order to the justice court directing the enforcement of the judgment thereinbefore rendered. Thereupon the jury was discharged over the objection and exception of defendants, who appeal to this court for review. There was filed a regular motion for new trial based upon three grounds, but they are in substance based upon the alleged error of the court in dismissing the appeal, thereby depriving defendants of their right of appeal. The parties will be referred to as plaintiff and defendants as they appeared in the lower court.

Plaintiff testified, in substance, that he was about 80 years old, and that he and his family lived three miles north and west of Vian; that he is the owner of a red cow with a white face and a red stripe across her nose; that she is not in the plaintiff's possession, but is at the home of defendant Harve Craighead; plaintiff has not seen, nor been in possession of, the cow for about four years; she was about 1½ years old when she strayed away from plaintiff; she was branded on the right side with a blotched J and marked in each ear with a swallow fork. A calf of this cow is also now in possession of defendants. After the cow' strayed off, plaintiff saw her first at the home of one of defendants.

Several witnesses for plaintiff corroborate his evidence and identify the animal in controversy as his property. These identifications are not based upon the artificial marks or brands on the animal, but upon the color and natural markings which are described as being so peculiar and unusual as to make the animal easily recognized.

Several witnesses are introduced by defendants who testify, in substance, that they have observed the animal in controversy, and that she bears none of the artificial marks or brands which plaintiff testified that he had placed upon his animal, but that she had both ears cropped—split in the right ear and underbit in the left ear; that she is not marked with a swallow fork in either ear and some of the witnesses indicate that they observed nothing indicating that any prior brandings or markings had been changed.

Wes Hammett testified that he knew the cow in question; that she was not branded, but was marked with a crop on her ears as above indicated, and that no evidence of change of markings was observable; that he makes no claim to the cow for himself, but that Craighead left her with witness to keep while he went off to pick cotton; that the plaintiff claimed her, but witness would not surrender her because she was in his care to be kept for Craighead. Witness is only a nominal party to the suit. Harve Craighead testified that he is in possession of the cow in controversy; that Frank O'Daniel turned her out and she was starving when witness put her up, fed her, and has had her about 1½ years; he does not claim to own the cow but that she is as much the property of witness as she is of Myers, the plaintiff; that she in fact belongs to neither. Plaintiff claimed ownership of the cow and calf and possession thereof as incident to his title.

At the conclusion of the evidence, the court excused the jury, and of his own motion dismissed the appeal as above indicated with the statement:

"I am going to dismiss this suit. These parties (defendants) cannot maintain it.

* * * Here this appellant claims here that he has no interest whatever in this property and he has no right to maintain the suit. * * * The appeal will be dismissed and order issued for the lower court to maintain the judgment of the jury that was given in the court and issue execution and order of possession according to the verdict."

Was the court in error in making such disposition of the case?

It is contended by plaintiff that at most this animal was an estray and under the law of estrays (chap. 21, art. 2, C. O. S. 1921) it became the duty of anyone who took her up to follow closely the provisions of said act, and a failure so to do rendered the person taking up the estray subject to criminal prosecution, and that since it appears here that none of the provisions of the act were followed, the defendants could not, in the words of the court, "maintain the suit."

We think the error of the court was in passing upon the identity of the animal in controversy. That was a controverted issue of fact. It is quite true that several witnesses identified the animal and testified that it was the plaintiff's property. On the other hand there was evidence from witnesses for the defendants from which the contrary conclusion might • be reached. Plaintiff's animal was marked with a certain brand and also with certain earmarks. These witnesses indicate that the animal in controversy bears none of the earmarks or the brand similar to that borne by plaintiff's animal, and that no signs were discoverable indicating obliteration of, or a change in, the marks or brand upon the animal.

The testimony of Craighead is to the effect that he did not own the cow, but he did not, in terms, disavow any interest in her. He did have possession of her and that possession might have been valuable—it had continued for 1½ years. Such possession undisturbed, under certain conditions, might have ripened into title. In the justice court, defendants had put in issue the plaintiff's title and right of possession. They had done the same in the district court and introduced some evidence tending to support their theory. We think it should be clear that in an action of replevin the plaintiff should identify his property, should show that it is being wrongfully detained, and that he is entitled to the possession of the same. That is the basis for the issuance of the writ of replevin, and surely nothing less is required in the proof to sustain plaintiff's action. It was the plaintiff's title and right to possession that was squarely in issue in this lawsuit. The only right to possession claimed by the plaintiff was that incident to ownership of the property; if he had no ownership, certainly he had no right to possession.

Plaintiff contends that the defendant by detaining the property without complying with the estray laws made himself amenable to a criminal charge. If that should be conceded, how does that help the plaintiff? If plaintiff is not the owner of the property, how is he prejudiced by defendants' wrongdoing? If defendants are liable at the instance of a plaintiff, who is not the owner, then they are answerable at the suit of every person in Oklahoma. And if a recovery is allowed against them in favor of a plaintiff who is not the owner, then the possession of such plaintiff, although supported by the judgment, is wrongful. Such cannot be the law. If the plaintiff is not the owner, then he has no rights to assert with respect to that property. We are referred to the case of James v. Fowler, 90 Ind. 563. That case is not controlling for the evidence there without the slightest conflict showed that the subject of the action belonged to the plaintiff and there was no issue as to identity or ownership.

Two other cases are referred to: Wyman v. Gould, 47 Me. 159, and Raber v. Hyde, 138 Mich. 101, but these are not in point here.

The plea and contention that the plaintiff was not the owner of the animal in controversy raised an issue of fact regardless of any other defense. First State Bank of Mannsville v. Howell, 41 Okla. 216, 137 Pac. 657.

"Under a general denial in a replevin action, the defendant may make any defense which will defeat the plaintiff's claim to right to possession as against the defendant." Williams v. Gibson Bros., 60 Okla. 147, 159 Pac. 649.

What authority had the court to dismiss this appeal after the same was completed by the filing and approval of the undertaking as provided for under sections 1009 and 1011, C. O. S. 1921? There was no irregularity in the appeal either in taking or consummating the same. The record indicates that the court might have been influenced by the action of defendants in failing to estray the cow. The penalties provided in the law for the failure to observe the estray act do not include a disability to be suffered

28

in the civil courts in trying the issue as to the ownership of the property.

The parties to this lawsuit were entitled under our law to a trial by jury. It is not the business of courts to transfer the possession of property from those who have it to others who have no superior right.

There is much evidence in this case tending to sustain plaintiff's contention, but we cannot say that there is no evidence tending to sustain defendants' contention. Therefore, it was error for the court to dismiss the appeal. First State Bank of Elmore v. Harris, 134 Okla. 282, 273 Pac. 892; Frick-Reid Supply Co. v. Hunter, 47 Okla. 151, 148 Pac. 83.

The judgment of the trial court is reversed, with direction to reinstate the cause in the district court and proceed in conformity herewith.

REID, LEACH, HERR, HALL, DIFFEN-DAFFER, and EAGLETON, Commissioners, concur.

By the Court: It is so ordered.