CONSOLIDATED CUT STONE CO. v. SEIDENBACH et al.
PATTERSON STEEL CO. et al. v. SAME et al.

Nos. 29925, 28902.   May 20, 1941.

Rehearing Denied June 17, 1941.

*114 P. 2d 480.*

C. A. Steele and W. A. Daugherty, both of Tulsa, for plaintiff in error Consolidated Cut Stone Company.

Samuel A. Boorstin, of Tulsa, John Barry, of Oklahoma City, and M. A. Breckinridge, of Tulsa, for defendants in error J. L. Seidenbach and Seidenbach Realty Company.

C. A. Steele and W. A. Daugherty, both of Tulsa, for plaintiffs in error Patterson Steel Company et al.

Samuel A. Boorstin, of Tulsa, and John Barry, of Oklahoma City, for defendant in error J. L. Seidenbach.

CORN, V. C. J. Case No. 28902 is a second appeal, taken after the mandate of this court issued in No. 21661, Consolidated Cut Stone Company et al. v. Seidenbach, 181 Okla. 578, 75 P. 2d 442, a statutory lien foreclosure action instituted April 22, 1927, by Ed M. Lightfoot, a labor lien claimant, against J. W. Wilson, the general contractor, and J. L. Seidenbach, the owner. As provided by statute, all lien claimants were originally made parties. The contract between Seidenbach and Wilson called for the construction and completion of a business building in Tulsa for $128,146. Delay damages of $125 per day were provided for on failure to complete the building by January 15, 1927, which time was extended to February 14, 1927. Wilson abandoned his contract with the building partially completed. April 2, 1927, Seidenbach, the owner, took over the work, completing the building on September 15, 1927. Wilson had failed to pay the appellants and other subcontractors supplying him with material and labor, and lien claims were filed to protect the same. The owner, Seidenbach, in the lien foreclosure ac-

tion, claimed, as against the contract price of the building, credit for delay damages as provided for in the contract, cost incurred in completing the building, defective work, managerial service and attorney fees. Due to the many lien claims filed and details in the nature of accounting presented, the case was referred to and tried by a referee, who made his report and findings, which were approved, judgment entered thereon, which judgment gave the owner, Seidenbach, as a credit on the contract price, $26,625 delay damages, $55,259.69 cost of completion, and amounts paid for labor; the total of such credits, when deducted from the contract price, left $26,335.22 as the fund available to lien claimants as provided by section 10977, O. S. 1931, that is, the amount he, Seidenbach, contracted to pay the original contractor, Wilson. The owner, Seidenbach, recovered judgment against Wilson for $26,308.33, which amount embraced the following items:

Amount paid to Wilson by the owner and unaccounted for by Wilson ........................$5,597.74
Difference between amount paid to materialmen of $12,616.69 and amount J. L. Seidenbach is entitled to on pro rata basis, which is $2,456.60, the difference being ................... 10,160.09
Conversion of I-Beams .......... 300.00
Damages to owner for faulty construction of roof ............ 250.00
Attorney fees .................. 10,000.00

No part of this embraced items charged or allowed to the owner as against the lien claimants. The referee allowed the lien claimants attorney fees, interest, and costs, but erroneously includes such items in determining the lienable amount. This court held that under section 10980, O. S. 1931, such items should not be so charged or included; that interest, court costs, and attorney fees could not be recovered as against the owner unless the lien claimant recovered the full amount of his claim. The trial court allowed the referee a fee of $10,000, which was held to be premature and excessive. The owner caused the Hartford Accident & Indemnity Company, surety on Wilson's bond, to be made a party and pleaded that by its bond it had covenanted to save him from all damage that he might sustain by Wilson's breaching his contract, pleaded Wilson's failure to pay subcontractors, the filing of the several liens, the amount of delay damages, and cost of completion. The Hartford moved to be discharged as a party, pleading that it was neither a necessary nor proper party, which plea was sustained and judgment so entered. No appeal was taken from such judgment.

The appellants, Consolidated Cut Stone Company and the Patterson Steel Company, instituted separate actions against the Hartford Accident & Indemnity Company, seeking to recover on the theory and claim that its surety contract guaranteed that Wilson would perform his contract with Seidenbach, which contract, providing specifically that Wilson should pay for all labor and material, was a contract for their benefit. It was held in their action that the Hartford surety contract was made for the sole benefit and protection of the owner, Seidenbach, and not for the benefit of the subcontractors. See Consolidated Cut Stone Co. v. Hartford Accident & Indemnity Co. (C. C. A. 10) 62 Fed. 2d 975.

The owner, Seidenbach, sued the Hartford Accident & Indemnity Company on its surety bond while the former appeal was pending in this court. In that appeal the subcontractors challenged the action of the trial court in allowing Seidenbach credit, as against them, for delay damages and disallowing, as against the owner, interest, court costs, and attorney fees. Seidenbach in his suit against the Hartford Accident & Indemnity Company pleaded all the items of damages that he had set out in the lien foreclosure case, to wit, delay damages, cost of completion, and set out each of the lien claims filed, including interest, costs, and attorney fees allowed them, alleging that he had thereby been damaged in a sum in excess of the penal amount of the bond. Had this court sustained the claim of appellants in the last appeal as to crediting delay damages and charged Seidenbach with the interest, court costs, and

attorney fees, Seidenbach's loss or damage would have been increased more than $40,000 over and above the amount of his judgment against Wilson. Before this court had disposed of the last appeal, and after the United States Circuit Court of Appeals had rendered its opinion holding that the Hartford Accident & Indemnity Company surety bond was not for the use and benefit of subcontractors, Seidenbach, on February 13, 1933, settled his claim or suit against the Hartford Accident & Indemnity Company for $46,250. Thereafter these appellants asked this court in the former appeal to appoint a referee and hear evidence in support of their claim that all or a part of the sum so paid by the Hartford Accident & Indemnity included the delay damages and other items the owner, Seidenbach, had been allowed credit for on his contract as against the lien claimants. This court held that such an inquiry was foreign to its appellate jurisdiction. The appellants filed a separate suit against Seidenbach in the Tulsa district court, No. 29925, Consolidated Cut Stone Company, a Corporation, etc., v. J. L. Seidenbach et al., wherein they asked that Seidenbach account to them for the money received from the Hartford Accident & Indemnity Company, which suit was pending when this appeal was taken. When the trial court entered judgment on the mandate issued on the former appeal the appellants made application for leave to file amended pleadings, pleading the Hartford Accident & Indemnity Company settlement and seeking to require Seidenbach to either account to them for the money so received or to have the same added to the fund found available for the payment of liens. The trial court denied the application and they have appealed.

The judgment entered by the trial court conformed to the opinion and mandate of this court. In the former appeal the liability of the owner and the amount due each lien claimant were definitely fixed. The fee to be allowed the referee being a part of the court costs, which this court held must be borne by the lien claimants, not being chargeable against the owner, consideration of the question did not affect the defendant Seidenbach. He paid into court the sum due under the judgment of this court and was therefore entitled to be discharged. When this court remands an appealed cause with directions to the trial court to render a specific judgment, the trial court has no discretion but to render the judgment as directed. McClung v. Harris, 11 Okla. 64, 65 P. 941; Wellsville Oil Co. v. Miller, 48 Okla. 386, 150 P. 186.

The Hartford Accident & Indemnity Company, by executing its surety bond binding it to protect Seidenbach from all damages that might be caused by a breach of the Wilson contract, neither created nor gave any contractual rights to these appellants as subcontractors. This was so determined in their action against the Hartford. Appellants say that, because Seidenbach included in his amended petition, as a part of his itemized claim for damages against the Hartford, delay damages and other items for which he had been allowed credit as against them, he may not retain any sum received thereon if any item for which he had been given such credit was included—that to do so would allow him a double credit or payment. Further, they contend that when Seidenbach released the Hartford Accident & Indemnity Company and Wilson from liability on the surety contract he released parties primarily liable to them. Obviously, so long as the trial court's judgment stood, the Hartford Accident & Indemnity Company had a complete defense to every item for which Seidenbach had been allowed credit. Until the last appeal was disposed of and Seidenbach's right to credit for the several contested items had been finally determined, the extent of Seidenbach's damages and the resulting liability of the Hartford as surety on Wilson's contract could not, with certainty, be de-

termined. Seidenbach and the Hartford Accident & Indemnity Company owed no duty to these appellants to delay settling their controversy until the former appeal was disposed of. Any sum paid by the Hartford Accident & Indemnity Company to Seidenbach for its full release on the surety bond before the last appeal was disposed of had to take into recognition the possibility that the claim of these appellants with reference to credit for delay damages might be sustained. The amount that Wilson owed Seidenbach was fixed by the judgment awarded in his favor against Wilson. That judgment was rendered March 22, 1930, for $26,308.33.

Wilson had been adjudged a bankrupt prior to the time that the Hartford Accident & Indemnity Company made the settlement. The release executed by Seidenbach was from liability on the surety contract. It in no way affected either the judgment these appellants procured against Wilson or their contractual rights with Wilson; in fact, Seidenbach was powerless to release such judgment or affect the contractual rights of these appellants with Wilson. There was no liability against the Hartford Accident & Indemnity Company in favor of these appellants, and the liability of Seidenbach in favor of these appellants was solely that created and fixed by the statute. Seidenbach was under no duty to these appellants to sue the Hartford Accident & Indemnity Company; they had no rights under the surety bond contract. The United States Circuit Court of Appeals, Tenth Circuit, held in their action, 62 Fed. 2d 975, 976:

"The contract obligates Wilson, as contractor, to provide all the labor and materials for the erection of the building, at the agreed price of $128,146. It requires him to do everything specified in the annexed 'General Conditions' and 'Specifications' made a part of the contract. These instruments should be construed together.

"Article VI of the contract specifies it shall not be binding upon the owner until the contractor shall furnish a bond, guaranteeing performance of the contract. Article 30 of the conditions provides that the owner shall have the right prior to signing the contract to require a bond of the contractor, covering the faithful performance of the contract and the payment of all obligations thereunder.

"The contract specifies the owner shall pay to the contractor, twice a month, on statements audited by the architect, 85 per cent of the value of labor and materials, and with all statements except the first there shall be filed with the architect a release of all lien claims. In the general conditions, there are provisions which bind the contractor to furnish the architect applications for the payments, and, if required, receipts, for materials and labor, and which postpone the payments until, if required, delivery is made to the owner of a release of all lien claims, or a bond is given therefor.

"It is recited in the conditions, in article 36, 'nothing contained in the contract documents shall create any contractual relation between any subcontractor and the owner.' And at the foot of the conditions, it is stated the contractor and subcontractor agree 'nothing in this article shall create any obligation on the part of the owner to pay or to see to the payment of any sums to any subcontractors.'

"These conditions also recite that the law of the place of building shall govern the construction of this contract.

"The contract may be fairly regarded as obligating the contractor to pay claims for labor and materials. But it does not follow that the appellant, a subcontractor and not a party to the contract, may enforce payment therefor against the surety in the bond. The question has arisen in many states, and the decisions are not in harmony, proceeding on different theories.

"It has been held the weight of authority denies the subcontractor a right of action, unless there is 'an intent by the promisee to secure some benefit to such third party, and . . . some privity between them, some obligation or duty owing from the promisee to such third party, giving the latter a legal or equitable claim to the benefit of the promise.' Federal Surety Co. v. Minneapolis Steel & Machinery Co. (C.C.A.) 17 Fed. 2d

242, 243; Williston on Contract, sec. 372, 13 C. J. 709."

The payment of the $46,250 by the Hartford Accident & Indemnity Company did not change nor alter the amount Seidenbach owed Wilson under his contract at the time the several liens were filed against his property. In the former appeal this court said:

"The statute creates the lien. Whatever amount is owing under the principal contract from the owner to the contractor is a trust fund for the payment of liens."

No contractual rights existed between these appellants and the owner, Seidenbach. Appellants, as subcontractors, had only such rights as are given them by the statute. Materialmen's lien is of statutory origin, and its scope is measured by such written law. In the case of Christy v. Union Oil & Gas Co., 28 Okla. 324, 114 P. 740, this court said:

"The law relating to the liens of mechanics is statutory, and its scope, operation, and effect, measured by the terms of the written law. Toledo Novelty Works v. Bernheimer, 8 Minn. 118 (Gil. 92). And implications extending the operation thereof in favor of subcontractors are not favored; parties claiming rights thereunder are required to show that they come or bring themselves within the plain terms of the law, and where they do not they are excluded from its benefits. Phillips on Mechanic's Liens, sec. 45; Shields v. Morrow, 51 Tex. 393; Ayres et al. v. Revere et al., 25 N. J. Law, 474. . . ."

When Wilson abandoned his contract with the building partially completed, Seidenbach made demand upon the Hartford Accident & Indemnity Company to complete the building. Had the Hartford taken over the work, completed the building, and responded under the terms of its surety contract, it was entitled to every defense as against the appellants and other lien claimants that Seidenbach had. The fact that it refused to assume the task of completing the building did not relieve Seidenbach from exercising due diligence in completing the building, nor did it relieve Seidenbach from the duty of asserting every valid defense to the claims of appellants and other lien claimants. Seidenbach could not waive or enlarge the statutory rights of the appellants and other lien claimants and hold the Hartford Accident & Indemnity Company as surety upon Wilson's bond. In the case of Fuqua et al. v. Tulsa Masonic Bldg. Ass'n, 129 Okla. 106, 263 P. 660, it was held:

"A surety for hire on a contractor's bond is not liable to the owner, who voluntarily paid obligations for materials furnished the contractor when such materialmen had permitted the statutory time for filing a lien statement to elapse without so filing liens and such obligations were not legally binding upon the owner at the time of such voluntary payment therefor."

Seidenbach in his action against the Hartford Accident & Indemnity Company sued for his own use and benefit, and not as a trustee, either express or implied, of these appellants. This is disclosed by his pleadings, and appellants do not contend that he sued as a trustee. In his pleadings he set forth every item that could cause him loss or damage, and his exhibit shows a possible loss of $130,312.08. The Hartford, having had notice and opportunity to defend, was bound by the judgment for $26,308.83 awarded Seidenbach against Wilson, its principal. The Hartford bond covered all damages Seidenbach might sustain as a result of Wilson's breach. The costs and expense of defending the former appeal were within the coverage of the bond. Seidenbach did not interfere with the contractors' efforts to recover from the Hartford; he tried to hold the Hartford as a party to the main suit; he waited until their litigation with the Hartford was concluded before making settlement. Had this court disallowed his claim for delay damages and charged his property with interest, court costs, and attorney fees, his loss would have exceeded the amount received from the Hartford.

Appellants contend that if the Hartford Accident & Indemnity Company paid to Seidenbach $26,625 delay damages, or any part thereof, they are en-

titled to have Seidenbach account to them or have that part added to the fund found to be available to them as lien claimants. Assuming that the $46,250 the Hartford paid to Seidenbach included items for which Seidenbach had received credit as against these appellants, may they maintain an action therefor? Appellants, to recover, must first establish a right, either granted by statute, or by contract, express or implied. One must recover on the strength of his own claim and right, rather than upon the weakness of his adversary. 41 C. J. par. 76; Craighead v. Myers, 146 Okla. 25, 293 P. 192; Hungerford v. Moore, 65 Ala. 232.

If the Hartford Accident & Indemnity Company overpaid Seidenbach, or paid him for items for which it was not liable because he had previously been paid or credited, such was Hartford's loss and it alone may complain. Unless these appellants had rights, existing prior to or at the time payment was made, either against Seidenbach or the Hartford, which were violated or altered by the payment, the mere fact of excess payment can give them no right. This form of claim is in the nature of an action in assumpsit, or for money had and received, or sometimes called "unjust enrichment." Where one obtains money on a claim asserted in his own right from a third person, he may not be held accountable to another even where such other had a better claim against the one paying the money. 41 C. J. 49. Its having been determined that Seidenbach, and not the subcontractors, had the right to maintain an action on the surety contract, any sum Seidenbach might recover in settlement of a suit can give these appellants no legal claim to the amount so received.

To recover, the plaintiff must show a right recognizable in law or in equity to the money paid. In Vanderbilt University et al. v. Williams et al., 152 Tenn. 664, 280 S. W. 689, the court said, in passing upon the claim of the plaintiff against the defendant to recover one-half the money defendant collected as rent from a vendor who occupied a space in a passageway in an alley located between buildings owned by plaintiff and defendant:

"Neither complainants nor defendants, then, each having an easement only in this passageway, can now own the fee in the land, as these estates cannot coexist in the same party. A man cannot have an easement in his own lands. 19 C. J. 863, and cases cited.

"It is urged that equity calls for relief to the complainants. But it must be borne in mind that, while a court of equity will afford a remedy to save a right in accordance with the maxim, 'Equity will not suffer a right to be without a remedy,' it is the remedy which is to be supplied, not the right. Equity may not be invoked to supply a remedy until a right, legal or equitable, exists. We think it clear that the owner of an easement only of use as a passage has no right to rents arising from occupation of the land.

"It is enough to show that defendant has no right to the money; he is answerable to the true owner and to him only." 41 C. J. 68, par. 76.

"In actions for money had and received, the plaintiff cannot recover unless the evidence shows that the money in justice belongs to him." Richolson v. Moloney, 96 Ill. App. 254.

In the case of Markworth v. State Sav. Bank of Woden, 212 Iowa, 954, 237 N. W. 471, at pages 474, 475, the rule is stated as follows:

". . . It is well settled that, where there are two claimants for the same money and one of them is recognized as being entitled to it by the person from whom it is due, and is paid, the other cannot maintain an action at law for moneys had and received to recover the money, for the reason that, having received the money under a claim of right in himself, the law will not imply any contract or promise by him to hold the money for the use of the other claimant or to pay it over to him, and therefore there is not, under the circumstances, any privity of contract upon which to found the action. See 41 C. J. 41; Shultz v. Boyd, 152 Ind. 166, 52 N. E. 750; Smith v. Goldsborough, 236 N. Y. 340, 140 N. E. 718; Sergeant v.

Stryker, 16 N. J. Law, 464, 32 Am. Dec. 404; Green v. Wilbraham (C. C.) 190 F. 274, 275."

Even had the claim of these appellants against the Hartford Accident & Indemnity Company not been adjudicated, they would have no claim to the amount received by Seidenbach, because he obtained it under a claim of right in himself.

The judgment of the trial court should be, and is, affirmed.

Justice Thurman S. HURST and Justice Ben ARNOLD having certified their disqualification to participate herein, Hon. L. V. ORTON, of Pawnee, and Hon. Ed. FALKENBERG, of Medford, were appointed by the Governor to sit in their stead.

WELCH, C. J., RILEY, J., and ORTON and FALKENBERG, Special Justices, concur. OSBORN, BAYLESS, GIBSON, and DAVISON, JJ., dissent. HURST and ARNOLD, JJ., disqualified.