**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 4 1997**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

PATRICIA A. HOLLINGSWORTH,

Plaintiff-Appellant,

v.

ARNOLD HILL, individually and in his official capacity as a Sheriff's Deputy for the McCurtain County Sheriff's Office, and RICHARD McPEAK, individually and in his official capacity as Sheriff of McCurtain County, Oklahoma,

Defendants-Appellees.

No. 95-7091

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA.**
**(D. Ct. No. CIV-94-347-P)**

---

Michael H. Thompson, Barton, Thompson & Associates, Oklahoma City, Oklahoma, appearing for the Plaintiff-Appellant.

Jason C. Wagner (Chris J. Collins, with him on the brief), Lee, Collins & Fields, Oklahoma City, Oklahoma, appearing for the Defendant-Appellees.

---

Before TACHA, BRISCOE, and MURPHY, Circuit Judges.

---

TACHA, Circuit Judge.

In this action under 42 U.S.C. § 1983, plaintiff Patricia Hollingsworth alleges that defendants Arnold Hill and Richard McPeak violated her rights under the Fourth and Fourteenth Amendments when they searched her hotel room and seized her two children during the service of a protective order. Ms. Hollingsworth appeals an order of the district court granting summary judgment to Hill and McPeak. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

## BACKGROUND

The following facts are not in dispute. On January 7, 1993, Patricia Hollingsworth fought with her husband. The next day her husband, James Hollingsworth, went to the courthouse to obtain a victim's protective order that limited Ms. Hollingsworth's legal contact with her husband and children. While her husband was gone, Ms. Hollingsworth left home with their two children and checked into the End of Trail Motel in Broken Bow, McCurtain County, Oklahoma.

Under the Oklahoma Protection From Domestic Abuse Act ("OPFDAA"), Okla. Stat. tit. 22, § 60.2, a victim of domestic abuse may seek an ex parte protective order by filing a petition with the Oklahoma district court. The OPFDAA requires such an order to be served upon the defendant in the same manner as a summons. On January 8, 1993, the McCurtain County Special

District Court issued an emergency protective order against Ms. Hollingsworth pursuant to Okla. Stat. tit. 22, § 60.3 entitled Ex Parte Emergency Order ("Order"). At noon on that day, defendant Arnold Hill, a McCurtain County sheriff's deputy, received a copy of the Order he was to serve on Patricia Hollingsworth. Deputy Hill, a sixteen-year law enforcement veteran, was frequently required to serve protective orders and summonses but was uncertain what this Order required him to do. When faced with a confusing legal question, the Sheriff and his deputies customarily sought legal advice from the District Attorney pursuant to Okla. Stat. tit. 19, § 215.5. Although the Sheriff did not require his deputies to follow the District Attorney's advice, members of the Sheriff's Department usually followed it.

The Order named James Hollingsworth and his two children, eight-month-old Hailey and two-year-old Taylor, as plaintiffs. It ordered Patricia Hollingsworth to (1) "not abuse or injure Plaintiff," (2) "not visit, assault, molest, harass or otherwise interfere with the Plaintiff," (3) "not come to the residence of the Plaintiff," and (4) "leave the residence of Plaintiff within 3 hours/days [sic] from service of th[e] Order until the hearing date." The fifth item in the Order stated: "This Order is not to prevent reasonable visitation between the parents with regard to the children."

The inherent inconsistency in the Order confused Deputy Hill. It named the children plaintiffs and ordered Patricia Hollingsworth not to "visit . . . or otherwise interfere with the Plaintiff." On the other hand, the Order stated that it was not intended to prevent reasonable visitation between the Hollingsworths and their children. It also sought to prevent abuse of and injury to plaintiffs. Based upon these observations, Deputy Hill believed that the Order probably required removal of the children from Ms. Hollingsworth's custody. Because of his confusion and according to Sheriff's Department custom, Hill sought legal advice from McCurtain County Assistant District Attorney Willard Driesel, Jr. Like Hill, Driesel believed that the Order required the children to be taken from Ms. Hollingsworth and turned over to their father.

After failing to find Ms. Hollingsworth, Deputy Hill delivered a copy of the Order to the Broken Bow Police Department. Hill asked the Broken Bow police to contact him if they located Ms. Hollingsworth. The Broken Bow police eventually notified Hill that they had located Ms. Hollingsworth at the End of Trail Motel. Broken Bow officers Mike Erwin and Lindell Mann proceeded to the motel. They knocked at the door of Ms. Hollingsworth's motel room, she answered the door, and they entered her room.

When Deputy Hill arrived at the motel, the motel room door was open. He found Officer Erwin in Ms. Hollingsworth's room and Officer Mann "standing

- 4 -

there at the door." When Hill walked up to the door, Officer Erwin said to Deputy Hill, "[T]his is Patricia," and Hill walked in. He then served the Order on Ms. Hollingsworth. Deputy Hill conferred with Officer Erwin about removing the children from Ms. Hollingsworth's custody, telling him about the advice of the Assistant District Attorney. Deputy Hill and Officer Erwin then removed the children and transported them separately to the Broken Bow Police Department, where they immediately turned the children over to the custody of their father.

January 8, 1993, the day that Deputy Hill served the Order, was Sheriff Richard McPeak's third day in office. McPeak had no involvement in the service of the Order and only became aware of the incident when he received notice of this suit. The McCurtain County Sheriff is responsible for establishing the policies and procedures of the Sheriff's Department. Sheriff McPeak testified that by statute and by custom, the McCurtain County District Attorney's Office serves as a legal advisor to the Sheriff's Department. That is, Sheriff McPeak instructed his deputies to seek advice from the District Attorney or his assistants when a legal issue arises.

On June 10, 1994, Ms. Hollingsworth brought this action seeking damages for the constitutional injury allegedly caused by defendants Hill and McPeak. The district court concluded that Deputy Hill was entitled to both absolute quasi-judicial immunity and qualified immunity from suit. The court also concluded

that Sheriff McPeak was not liable in his official capacity as the representative of McCurtain County. Finally, the court concluded that Sheriff McPeak was entitled to qualified immunity from suit in his individual capacity. Accordingly, the district court granted summary judgment to Hill and McPeak by Order filed May 4, 1995. This appeal followed.

## DISCUSSION

Ms. Hollingsworth contends that the district court erred in two respects. First, she contends that Deputy Hill is not entitled to qualified immunity from liability under 42 U.S.C. § 1983. Second, she asserts that Sheriff McPeak is liable in his official capacity for the constitutional injury caused by the acts of Deputy Hill.[1]

We review the district court's entry of summary judgment de novo, applying the same standard used by the district court under Fed. R. Civ. P. 56(c). V-1 Oil Co. v. Means, 94 F.3d 1420, 1422 (10th Cir. 1996). Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a

---

[1] Hollingsworth does not appeal the district court's decision that Sheriff McPeak is entitled to qualified immunity.

judgment as a matter of law." Fed. R. Civ. P. 56(c). "We view the evidence and draw any inferences therefrom in the light most favorable to the party opposing summary judgment." Coosewoon v. Meridian Oil Co., 25 F.3d 920, 929 (10th Cir. 1994). "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party,' summary judgment in favor of the moving party is proper." Thomas v. International Business Machines, 48 F.3d 478, 484 (10th Cir. 1994) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

## A.      Qualified Immunity

"We analyze assertions of qualified immunity under a two-part framework: first we determine whether the plaintiff has asserted a violation of a constitutional or statutory right, and then we decide whether that right was clearly established such that a reasonable person in the defendant's position would have known that [his] conduct violated that right." Garramone v. Romo, 94 F.3d 1446, 1449 (10th Cir. 1996) (citation omitted). "Plaintiff has the 'burden to show with particularity facts and law establishing the inference that defendant violated a constitutional right.'" Abeyta v. Chama Valley Indep. Sch. Dist., No. 19, 77 F.3d 1253, 1255 (10th Cir. 1996) (quoting Walter v. Morton, 33 F.3d 1240, 1242 (10th Cir. 1994)). She must then demonstrate that "the constitutional . . . rights the defendant allegedly violated were clearly established at the time of the conduct at issue."

Albright v. Rodriguez, 51 F.3d 1531, 1534 (10th Cir. 1995). Once a plaintiff satisfies this burden, the burden shifts to the defendant to demonstrate that "'no material issues of fact remain as to whether the defendant's actions were objectively reasonable in light of the law and information the defendant possessed at the time of his actions.'" Guffey v. Wyatt, 18 F.3d 869, 871 (10th Cir. 1994) (quoting Salmon v. Schwarz, 948 F.2d 1131, 1136 (10th Cir. 1991)).

The district court concluded that Deputy Hill was entitled to qualified immunity from suit because it was objectively reasonable for him to believe that his actions did not violate Ms. Hollingsworth's rights under the Fourth and Fourteenth Amendments. Deputy Hill agrees with the district court's conclusion, but also contends, as an alternate ground for affirmance, that the rights upon which Ms. Hollingsworth relies are not clearly established. Ms. Hollingsworth argues that Deputy Hill is not entitled to qualified immunity because a reasonable person in Hill's position would have known that entry into Ms. Hollingsworth's motel room and removal of her two children without a meaningful opportunity to be heard violated her clearly established rights.

1.      **Violation of a Clearly Established Right**

In claiming a violation of her constitutional rights, it is unclear whether Hollingsworth relies upon her Fourth Amendment right to be free from unreasonable searches and seizures or her Fourteenth Amendment liberty interest

in the care, custody, and management of her children, or both. Nevertheless we conclude that Deputy Hill did not violate Ms. Hollingsworth's rights under the Fourth Amendment.

Hill entered Hollingsworth's motel room through its open door after Officer Erwin introduced Hollingsworth to Hill through the door. Under those circumstances, Ms. Hollingsworth had no constitutionally protected reasonable expectation of privacy that should have prevented Deputy Hill from entering the room and serving the Order. See United States v. Gault, 92 F.3d 990, 991 (10th Cir.), cert. denied, 117 S. Ct. 321 (1996); United States v. Owens, 782 F.2d 146, 149-50 (10th Cir. 1986). Ms. Hollingsworth has failed to sustain her burden to demonstrate that she possessed a subjective expectation of privacy that society is prepared to recognize as reasonable at the time Hill entered her motel room. Owens, 782 F.2d at 150 (citing Katz v. United States, 389 U.S. 347, 361 (1967) (Harlan, J., concurring)). Therefore, Ms. Hollingsworth has failed to demonstrate that Deputy Hill conducted an unreasonable search of her motel room in violation of the Fourth Amendment.

Likewise, Deputy Hill's removal of Ms. Hollingsworth's children did not violate her right to be free from unreasonable seizures. "Fourth Amendment rights are personal rights which . . . may not be vicariously asserted." Rakas v. Illinois, 439 U.S. 128, 133-34 (1978) (quotation and citation omitted).

Undoubtedly, parents may assert their children's Fourth Amendment rights <u>on behalf of</u> their children. <u>See</u> <u>Van Emrik v. Chemung County Dep't of Soc. Servs.</u>, 911 F.2d 863, 867 (2d Cir. 1990). Ms. Hollingsworth does not assert her children's Fourth Amendment rights on their behalf because her complaint does not include the children as plaintiffs. Therefore, Ms. Hollingsworth has failed to demonstrate that Deputy Hill's removal of the children was an unreasonable seizure in violation of the Fourth Amendment.

On the other hand, Deputy Hill's actions did implicate Hollingsworth's rights under the Due Process Clause of the Fourteenth Amendment. Parents have a fundamental liberty interest in the "care, custody, and management" of their children. <u>Santosky v. Kramer</u>, 455 U.S. 745, 753 (1982); <u>see also</u> <u>Stanley v. Illinois</u>, 405 U.S. 645, 651-58 (1972). The state may not deprive a person of her liberty interest without providing a fair procedure for the deprivation. <u>Doyle v. Oklahoma Bar Assoc.</u>, 998 F.2d 1559, 1569 (10th Cir. 1993). Contrary to Hollingsworth's reading of <u>Albright v. Oliver</u>, 510 U.S. 266 (1994), the Fourteenth Amendment rather than the Fourth Amendment protects her liberty interest in the custody of her children. Ms. Hollingsworth's interest in the custody of her children was, therefore, a constitutionally protected liberty interest which could not be deprived without due process.

Removal of children from the custody of their parents requires predeprivation notice and a hearing "'except for extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event.'" Spielman v. Hildebrand, 873 F.2d 1377, 1385 (10th Cir. 1989) (quoting Smith v. Organization of Foster Families for Equality and Reform, 431 U.S. 817, 848 (1977)); see also Martinez v. Mafchir, 35 F.3d 1486, 1491 (10th Cir. 1994); United States v. Watts, 513 F.2d 5, 6 (10th Cir. 1975) (citing In re Gault, 387 U.S. 1, 33-34 (1967)). Accordingly, the state's interest in the health and welfare of its children constrains a parent's liberty interest in the custody, care, and management of her children. Thus, in emergency circumstances which pose an immediate threat to the safety of a child, officials may temporarily deprive a parent of custody without parental consent or a court order. See Robison v. Via, 821 F.2d 913, 921 (2d Cir. 1987) (listing cases); cf. Snell v. Turnell, 920 F.2d 673, 697 (10th Cir. 1990) (discussing appropriateness of qualified immunity in a potential abuse situation where there is evidence of emergency circumstances justifying immediate removal of children and listing cases).

Consistent with the requirements of procedural due process, two related Oklahoma statutory schemes balance the State's interest in the safety of its children against parents' interest in the care, custody, and management of their

children.  Okla. Stat. tit. 10, §§ 1101-1149; Okla. Stat. tit. 22, §§ 60 - 60.7.

Under each statutory scheme, Oklahoma protects these interests through

procedures designed to ensure both that parents whose children are removed

receive notice and an "opportunity to be heard 'at a meaningful time and in a

meaningful manner,'" Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (quoting

Armstrong v. Manzo, 380 U.S. 545, 552 (1965)), and that children are removed

from parental custody in time to avoid threats to their health and safety.  Under

appropriate circumstances, either scheme could justify the separation of a parent

from her children.  The circumstances presented to Deputy Hill, however, did not

justify separation of Ms. Hollingsworth from her children under either statute.

First, under Oklahoma law governing delinquent, dependent, and neglected

children, an officer authorized to investigate suspected child abuse may file a

petition in state district court seeking relief from allegedly abusive conditions on

behalf of the "deprived" child.  Okla. Stat. tit. 10, §§ 1101, 1103 (1993).  Once a

petition has been filed, the judge may issue an order authorizing removal of the

child from parental custody if "it appears that the child is in such condition or

surroundings that his welfare requires that his custody be immediately assumed by

the court."  Okla. Stat. tit. 10, § 1104(d).  In addition, before a petition is filed, a

peace officer without a court order may remove a child if "the child's

- 12 -

surroundings are such as to endanger the welfare of the child." Okla. Stat. tit. 10, § 1107(A)(1) (1993).

We conclude that the Oklahoma child abuse law does not justify the removal of Ms. Hollingsworth's children without prior notice and a hearing. The Order that Deputy Hill was to serve on Ms. Hollingsworth did not direct Hill to remove her children. Further, the record contains no evidence that Ms. Hollingsworth actually endangered the welfare of her children prior to their removal.

Second, under the Oklahoma Protection from Domestic Abuse Act, a victim of domestic abuse may seek an ex parte protective order that orders a family member not to abuse, injure, visit, assault, molest, or otherwise interfere with the victim. Okla. Stat. tit. 22, §§ 60.2(B), 60.3 (1993). The sheriff must serve the order on the defendant in the same manner as a summons. Okla. Stat. tit. 22, § 60.4(A) (1993). The sheriff must give priority to service of emergency ex parte orders, and the district court must hold a hearing on the petition for a permanent protective order within ten days. Okla. Stat. tit. 22, § 60.4(B) (1993). Although protective orders issued under the Act cannot "purport to . . . determine the issues between the parties as to child custody [or] visitation," Okla. Stat. tit. 22, § 60.4(H) (1993), an emergency ex parte protective order can effectively prevent

visitation between a parent and a child pending a hearing on the petition.  See

Marquette v. Marquette, 686 P.2d 990, 996 (Okla. Ct. App. 1984).

We conclude that the removal of Ms. Hollingsworth's children without
notice or a hearing was not justified under the Protection from Domestic Abuse
Act.  Deputy Hill apparently concluded that the Order required him to remove the
children because Ms. Hollingsworth would be in violation of the Order
immediately upon service.  Deputy Hill, however should have allowed Ms.
Hollingsworth some opportunity to comply with the Order.[2]  That Deputy Hill
removed Ms. Hollingsworth's children from her lawful custody without either
notice or a meaningful opportunity to be heard is undisputed.  Although the Order
was intended to protect the children from abuse, injury, molestation, and
harassment by their mother, the record contains no evidence that Ms.
Hollingsworth posed an immediate threat to their safety.  Accordingly, the
circumstances did not justify removal of the children from Ms. Hollingsworth's
custody under emergency circumstances.  Ms. Hollingsworth has met her burden
of demonstrating that Deputy Hill deprived her of any meaningful opportunity to
be heard thereby violating her constitutional right to procedural due process.

---

[2] Oklahoma made this requirement explicit in a 1994 amendment which provides
that a person in violation of a protective order may be arrested only if the person "has had
a reasonable time to comply with such order."  Okla. Stat. tit. 22, 60.9(A)(3) (1994).

- 14 -

To defeat a qualified immunity defense, a plaintiff also bears the burden of demonstrating that the right violated by the defendant was clearly established at the time he acted. Ms. Hollingsworth's right to notice and an opportunity to be heard prior to the deprivation of her liberty interest in the care, custody, and management of her children was clearly established in January 1993, despite Deputy Hill's argument to the contrary. See Stanley v. Illinois, 405 U.S. at 651-58; Santosky, 455 U.S. at 753-54, 758-59; Martinez v. Mafchir, 35 F.3d 1486, 1491 (10th Cir. 1994); Spielman v. Hildebrand, 873 F.2d 1377, 1385 (10th Cir. 1989); United States v. Watts, 513 F.2d 5, 6 (10th Cir. 1975) (citing In re Gault, 387 U.S. 1, 33-34 (1967)). Therefore, we must next consider whether Deputy Hill has sustained his burden of demonstrating that it was objectively reasonable for him to believe that his actions did not violate Ms. Hollingsworth's right to due process.

**2.    Objective Reasonableness and Extraordinary Circumstances**

Once the plaintiff has established the inference that the defendant's conduct violated a clearly established constitutional right, a qualified immunity defense ordinarily fails. Cannon v. City and County of Denver, 998 F.2d 867, 870-71 (10th Cir. 1993). A defendant may nevertheless be entitled to immunity from suit if he can demonstrate that "extraordinary circumstances" intervened and "so 'prevented [him] from knowing that his actions were unconstitutional that he

should not be imputed with knowledge of an admittedly clearly established right.'" Cannon, 998 F.2d at 871 (quoting V-1 Oil Co. v. Wyoming Dep't of Envtl. Quality, 902 F.2d 1482, 1488 (10th Cir.), cert. denied, 498 U.S. 920 (1990)); see Harlow v. Fitzgerald, 457 U.S. 800, 818-19 (1982).

The extraordinary circumstances exception is most frequently applicable in cases that involve reliance upon counsel. V-1 Oil Co., 902 F.2d at 1488. Although reliance upon counsel is not itself an extraordinary circumstance, it is a vital ingredient in cases where we have found extraordinary circumstances to exist. See id. (listing cases). We have identified four factors that, when applied on a case-by-case basis, help us discern when such extraordinary circumstances exist in the context of reliance on counsel. We consider "[1] how unequivocal and specifically tailored to the particular facts giving rise to the controversy, the advice was, [2] whether complete information had been provided to the advising attorney(s), [3] the prominence and competence of the attorney(s), and [4] how soon after the advice was received the disputed action was taken." V-1 Oil Co., 902 F.2d at 1489 (citations omitted).

The factors relevant to extraordinary circumstances uniformly favor Deputy Hill's claim of qualified immunity. First, Assistant District Attorney Driesel's advice was specifically tailored to the facts giving rise to this controversy because his advice concerned only the proper response to the Order. Second, when he

formulated his advice, Driesel possessed all of the information at Deputy Hill's disposal, namely the Order. Third, as an Assistant District Attorney, Driesel had the prominence of a county officer who was charged by statute to advise the Sheriff's Department. Other than the advice in question, the record contains no evidence implying that Driesel was incompetent. Fourth, Deputy Hill served the Order and transferred Ms. Hollingsworth's children to their father immediately after he received the advice.

After our application of these factors, we conclude that it was objectively reasonable for an officer in Deputy Hill's position to believe that his actions did not violate Ms. Hollingsworth's constitutional right. The test for qualified immunity requires that we look to a reasonable law enforcement officer in Deputy Hill's position to determine whether his actions were objectively reasonable. Thus, we are bound to evaluate the reasonableness of Deputy Hill's actions from his perspective at the time. In light of the circumstances facing an officer in Hill's position, we conclude that Hill's actions were objectively reasonable.

At the time of the events in question, Deputy Hill was a sixteen-year law enforcement veteran. He had received training in child abuse investigation including instruction concerning hearings "after the [abused] child is removed from the home." He had also been trained in the service and execution of victim protective orders. When asked what he was taught about such orders he replied,

"You know, you follow the instructions of the judge . . . on what the protective order explains to do."

Deputy Hill had never before served a victim's protective order which listed the defendant's children as plaintiffs. Hill read the Order, and its facial ambiguity struck him immediately. The Order, which was clearly designated "ex parte" (informing Hill that no adversarial hearing had occurred), was entitled a <u>protective</u> order. Although we know now that there was no evidence of abuse or neglect, the Order's use of the word "protective" to describe its function no doubt connoted its common sense meaning—a judge had signed a valid court order that the children, named plaintiffs on the document, were in need of some kind of protection. Deputy Hill's knowledge of the case was limited to the information contained in the Order. He knew from the face of the Order that both parents had some rights in the children's care, custody, and maintenance, but apparently that their father was entitled to more than mere visitation. Mr. Hollingsworth was arguably entitled to residential custody, with only reasonable visitation rights residing with Ms. Hollingsworth. Deputy Hill thought that he was to deliver the children immediately back to their father, who clearly also had rights under the Order. Based upon these observations Hill believed that the "judge knew what he was doing when he signed [the Order]," and that the children were probably to be transferred from Ms. Hollingsworth to Mr. Hollingsworth.

Before acting, Deputy Hill sought legal advice from Assistant District Attorney Driesel. Hill was entitled to seek such advice under Okla. Stat. tit. 22, § 215.5 and was expected to do so under Sheriff's Department custom. Hill delivered the Order to Driesel for his review. Driesel agreed with Deputy Hill's instinct; he concluded that the Order required Hill to remove the children from Ms. Hollingsworth's custody when he served the Order.[3] After speaking with Driesel, Deputy Hill served the order upon Ms. Hollingsworth and transferred the children directly to their father's custody.

Hill did not take the children for any purpose other than to comply with the terms of the Order. The Oklahoma domestic and child abuse statutes are premised upon the assumption that the state itself is taking temporary custody of the children. Deputy Hill knew that the state itself was not taking such custody. Upon advice of counsel, Deputy Hill believed he was required to transfer custody between two private parties pursuant to a court order. He was acting under the advice of counsel. His clear intent, evidenced by his immediate transfer of the children to their father, was to give effect to the Order.

---

[3] Driesel's advice is analogous to the advice given in V-1 Oil where a Wyoming Assistant Attorney General advised the defendant official that a Wyoming statute permitted the official to conduct a warrantless search. V-1 Oil, 902 F.2d at 1484. In fact, Driesel's advice went further. More than merely advising Hill of permissible action under a statute, Driesel advised Hill that the protective order required Hill to remove Hollingsworth's children.

The benefit of our constitutional hindsight clearly reveals that Ms. Hollingsworth was entitled to notice and an opportunity to be heard before she was deprived of custody of her children. Yet, we recognize that Deputy Hill was positioned between two private parties in the midst of a domestic dispute with a valid court order called a "protective" order. In that position at the time, Deputy Hill simply did not have the benefit of the constitutional hindsight that we rely on today. The circumstances prevented Hill from knowing that his actions were unconstitutional. Even if the right to procedural due process was clearly established, Deputy Hill's actions were reasonable in light of the circumstances he faced at the time he acted. Therefore, we hold that he is entitled to qualified immunity.

Because we find that Deputy Hill is entitled to qualified immunity, we need not consider whether he is entitled to absolute quasi-judicial immunity. We affirm the district court's decision granting Deputy Hill summary judgment.

B.    **Local Government Liability**

We next evaluate the district court's conclusion that McCurtain County, through its representative Sheriff McPeak, was not liable for any constitutional injury to Ms. Hollingsworth under Monell v. Department of Soc. Servs., 436 U.S. 658 (1978). Under 42 U.S.C. § 1983, a local government may be held liable for the constitutional violation of its employees only when employee "action pursuant

to official municipal policy . . . caused a constitutional tort." Monell, 436 U.S. at 691. Therefore, "to establish municipal liability a plaintiff must show (1) the existence of a municipal custom or policy and (2) a direct causal link between the custom or policy and the violation alleged." Jenkins v. Wood, 81 F.3d 988, 993-94 (10th Cir. 1996) (citing City of Canton v. Harris, 489 U.S. 378, 385 (1989) and Hinton v. City of Elwood, 997 F.2d 774, 782 (10th Cir. 1993)). In this case, municipal liability refers to the potential local government liability of McCurtain County through its representative Sheriff McPeak.

Ms. Hollingsworth asserts three separate bases for her argument that McCurtain County is liable. First, she asserts that the decision to remove her children from her custody was an official policy of McCurtain County that resulted in the deprivation of her due process rights. Second, she contends that Sheriff McPeak's custom of seeking legal advice from the McCurtain County District Attorney caused the violation of her rights. Third, she maintains that Sheriff McPeak's failure to adopt a policy applicable to the circumstances demonstrated deliberate indifference to her constitutional rights. We address each contention in turn.

1.    **The Decision to Remove Ms. Hollingsworth's Children**

Ms. Hollingsworth argues that the decision to remove her children was the official policy of McCurtain County. Where a "plaintiff seeks to impose

municipal liability on the basis of a single incident, the plaintiff must show that the particular illegal course of action was taken pursuant to a decision made by a person with authority to make policy decisions on behalf of the entity being sued." Jenkins, 81 F.3d at 994 (citing Pembaur v. City of Cincinnati, 475 U.S. 469, 483-85 (1986)). Ms. Hollingsworth does not argue that Deputy Hill was authorized to make Sheriff's Department policy. Neither does she maintain that Sheriff McPeak directed the removal of her children or ratified Deputy Hill's decision to remove them. Rather, Hollingsworth identifies Assistant District Attorney Driesel as the final policymaker relevant to the decision to remove her children in violation of her due process rights.

Whether an individual possesses final policymaking authority "is a legal issue to be determined by the court based on state and local law." Randle v. City of Aurora, 69 F.3d 441, 447 (10th Cir. 1995). Under Pembaur and its progeny, Driesel could become the County's final policymaker with respect to the events at issue in two ways. First, Driesel could possess explicit final policymaking authority pursuant to Oklahoma statutory or local government law. See Randle, 69 F.3d at 447 (citing City of St. Louis v. Praprotnik, 485 U.S. 112, 124 (1988)); Jantz v. Muci, 976 F.2d 623, 630 (10th Cir. 1992). Second, Sheriff McPeak could delegate final policymaking authority to Driesel. See Randle, 69 F.3d at 448; Ware v. Unified Sch. Dist., 902 F.2d 815, 818 (10th Cir. 1990).

Assistant District Attorneys in Oklahoma possess explicit statutory authority to render legal advice to county officers such as sheriffs:

> The District Attorney or his assistants shall give opinion and advice to . . . civil officers of his counties when requested by such officers . . . upon all matters in which any of the counties of his district are interested, or relating to the duties of such . . . officers in which the state or counties may have an interest.

Okla. Stat. tit. 19, § 215.5. This language is similar to the relevant Ohio statutory language discussed in Pembaur.[4] Ms. Hollingsworth's reliance upon this similarity, however, is misplaced. In Oklahoma, the Assistant District Attorney is not a county officer like the Ohio County Prosecutor in Pembaur. The statutory authority of the Assistant District Attorney does not encompass the right to "instruct[]" sheriff's deputies how to accomplish their task, but only to render advice and opinion. Pembaur, 475 U.S. at 485. Assistant District Attorney Driesel is an officer of the State, Laidley v. McClain, 914 F.2d 1386, 1389 (10th Cir. 1990), and is not vested with authority over the conduct of McCurtain County sheriff's deputies or the service and execution of protective orders issued by Oklahoma courts. Rather, Sheriff McPeak is vested with the final policymaking authority over the Sheriff's Department, including the conduct of deputy sheriffs and the service and execution of orders issued by Oklahoma courts. Okla. Stat.

---

[4] "Ohio Rev. Code Ann. § 309.09(a) (1979) provides that county officers may 'require instructions from [the County Prosecutor] in matters connected with their official duties.'" Pembaur, 475 U.S. at 484-85 (omission in original).

- 23 -

tit. 19, §§ 514, 516, 547(A). Thus, we must determine whether Sheriff McPeak, as part of his standing policy to request legal opinion and advice from the District Attorney, delegated his authority over the service and execution of court orders to Driesel.

Ms. Hollingsworth bases her contention that Sheriff McPeak delegated his final policymaking authority to Driesel on the similar, but distinguishable, reliance of the Pembaur defendants on the Ohio County Prosecutor for legal direction. Whether a policymaker has delegated his authority depends upon "(1) whether the official is meaningfully constrained 'by policies not of that official's own making'[, and] (2) whether the official's decision[s] are final—i.e., are they subject to any meaningful review." Randle, 69 F.3d at 448 (citing Praprotnik, 485 U.S. at 127 and Ware, 902 F.2d at 818 ("Delegation does not occur when a subordinate's decisions are constrained by policies not of his making or when those decisions are subject to review by the authorized policymaker.")).

In Pembaur, the Sheriff's Office had a policy of referring legal questions to the County Prosecutor and strictly following his advice. There, the deputies' supervisor "told them to call Assistant Prosecutor Whalen and to follow his instructions." Pembaur, 475 U.S. at 473 (emphasis added). The Sheriff directed his deputies to seek and follow the instructions of the County Prosecutor,

transforming the County Prosecutor's advice into a "clear command" that constituted county policy. Id. at 485.

In the case at bar, undisputed facts establish that Sheriff McPeak and his deputies usually followed the advice of the District Attorney. This necessarily implies that the Sheriff's Department sometimes did not follow the advice of the District Attorney. No evidence, however, supports the inference that the Sheriff required his deputies to follow that advice. Sheriff McPeak and his deputies retained the authority and discretion to reject the advice of the District Attorney—that is, they retained the authority to conduct a meaningful review of the District Attorney's opinion. The record contains no evidence that would allow a reasonable jury to infer that Sheriff McPeak delegated to Driesel the decision of whether or not to remove Ms. Hollingsworth's children from her custody.

Thus, neither Driesel nor Sheriff McPeak was responsible for the "policy" decision to remove Ms. Hollingsworth's children without notice and a hearing. Further, although Deputy Hill was responsible for the decision, he is not a final policymaker for the purposes of local government liability. The authority to make policy and the decision to act did not reside with Driesel, McPeak, or Hill at any one time. Therefore, Ms. Hollingsworth may not base her claim of local government liability upon the decision to remove her children as an official policy of McCurtain County.

## 2. McPeak's Custom of Seeking Advice

Next, Ms. Hollingsworth contends that the County is liable because Sheriff McPeak's custom of seeking legal advice and opinion from the District Attorney caused the violation of her constitutional right to due process. Plaintiff must show that there is a direct causal link between the official policy and the injury alleged. Jenkins, 81 F.3d at 993-94 (citing Harris, 489 U.S. at 385). "[T]he official policy must be the moving force for the constitutional violation in order to establish" local government liability. Haines v. Fisher, 82 F.3d 1503, 1507 (10th Cir. 1996) (citing Monell, 436 U.S. at 694). Therefore, "[i]t is only when the execution of the government's policy or custom . . . inflicts the injury that the municipality may be held liable under § 1983." Harris, 489 U.S. at 385 (quoting Springfield v. Kibbe, 480 U.S. 257, 267 (1987) (O'Connor, J., dissenting)) (internal quotations omitted) (omission in original).

In this case, the record contains no evidence to indicate a direct causal link between the Sheriff's Department custom of seeking legal advice from the District Attorney and the unconstitutional removal of Ms. Hollingsworth's children. The execution of the custom itself did not inflict Hollingsworth's injury. Deputy Hill's decision to seek Driesel's opinion caused injury to no one. Rather, Hill's independent decision to remove Ms. Hollingsworth's children inflicted her injury. "[M]unicipal liability is limited to 'acts that are, properly

speaking, acts "of the municipality"—that is, acts which the municipality has officially sanctioned or ordered.'" Starrett v. Wadley, 876 F.2d 808, 818 (10th Cir. 1989) (quoting Pembaur, 475 U.S. at 480)). McCurtain County did not officially sanction the decision to remove Ms. Hollingsworth's children through the Sheriff's Department custom of seeking legal advice from the District Attorney. Therefore, Hollingsworth may not base her claim of local government liability upon that custom.

## 3. Sheriff McPeak's Alleged Deliberate Indifference

Finally, Ms. Hollingsworth argues that Sheriff McPeak's failure to adopt a policy applicable to the circumstances presented in this case demonstrated deliberate indifference to Ms. Hollingsworth's constitutional rights. Where the official policy that forms the basis of a local government liability claim consists of a failure to act, the plaintiff "must demonstrate that the municipality's inaction was the result of deliberate indifference to the rights of its inhabitants." Hinton v. City of Elwood, 997 F.2d 774, 782 (10th Cir. 1993) (internal quotations and citations omitted). A local government acts with deliberate indifference when the need to act "is so obvious, and the inadequacy [of existing policy or custom] so likely to result in the violation of constitutional rights, that the policymakers . . . can reasonably be said to have been deliberately indifferent to the need." Harris, 489 U.S. at 390. Thus, a local government policymaker is deliberately indifferent

when he "deliberately" or "consciously" fails to act when presented with an obvious risk of constitutional harm which will almost inevitably result in constitutional injury of the type experienced by the plaintiff. Id. at 389-90.

Ms. Hollingsworth argues that the McCurtain County Sheriff's Department failed to craft policies concerning the service of protective orders or the removal of juveniles from the custody and care of their parents. She contends that Sheriff McPeak admitted that the Department had no such policies. On the contrary, Sheriff McPeak testified merely that the Sheriff's Department manual of policies and procedures did not contain such policies. This fact alone, however, does not mean that the Sheriff's Department failed to craft any policy.

Sheriff McPeak testified that the Sheriff's Department had multiple policies applicable in circumstances similar to those faced by Deputy Hill. He testified that, in instances of child abuse or neglect, members of his department followed the process set out in Oklahoma law concerning dependent and neglected children. See Okla. Stat. tit. 10, §§ 1101-1149. In addition, Sheriff McPeak testified that he had ordered his deputies to make certain that they notified proper authorities in circumstances involving "any court process that has a statutory hearing attached to it." Finally, Department policy required sheriff's deputies to seek legal advice from the District Attorney when the Department received a facially defective or otherwise questionable order or warrant.

Although these policies failed to prevent constitutional injury to Ms. Hollingsworth, no reasonable jury could conclude that the McCurtain County Sheriff was deliberately indifferent to her rights because of his failure to act. The policies in place were designed to ensure that sheriff's deputies followed relevant federal constitutional and Oklahoma state law.

In addition, the injury experienced by Ms. Hollingsworth did not result from an obvious risk of which Sheriff McPeak knew or should have known. In Canton v. Harris, 489 U.S. at 390 n.10, the Supreme Court gave an example of the type of risk necessary to give rise to deliberate indifference. Hypothetical city policymakers who provide their police officers firearms to allow them to apprehend fleeing felons would exhibit deliberate indifference either by (1) failing to teach officers the constitutional limitations on the use of deadly force, or (2) ignoring the frequent excessive use of force by its officers. Id. In both cases, the policymakers either knew or should have known that their officers were or would be presented with the deadly force issue, and that some officers inevitably would exercise excessive force. Id.

In this case, however, the risk of constitutional harm which resulted in Ms. Hollingsworth's injury was not an obvious risk that inevitably led to the harm she suffered. In many years of experience, neither Sheriff McPeak nor Deputy Hill had ever encountered an internally inconsistent Emergency Protective Order in

which the plaintiffs were children in the defendant-parent's custody. Given the Sheriff's Department policies in place, the risk of constitutional harm was not obvious and Ms. Hollingsworth's injury was not inevitable. The circumstances faced by Deputy Hill did not present an obvious risk of harm that the Sheriff's Department should have anticipated through a policy specifically designed to avoid the harm inflicted upon Ms. Hollingsworth.

Drawing all reasonable inferences in favor of Ms. Hollingsworth, no rational trier of fact could conclude that Sheriff McPeak's lack of policy constituted deliberate indifference to Ms. Hollingsworth's right to procedural due process. We affirm the district court's decision granting Sheriff McPeak summary judgment.

## CONCLUSION

Based upon the above analysis, we hold that Deputy Hill is entitled to qualified immunity from suit because it was objectively reasonable for him to believe that his actions did not violate Ms. Hollingsworth's due process rights. In addition, we conclude that McCurtain County is not subject to local government liability through its representative Sheriff McPeak. Therefore, we AFFIRM the Order of the district court in all respects.