**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 2 1997**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

CHARLES REID, an individual;
TRACI REID, an individual,

     Plaintiffs-Appellants,

v.

BILL HAMBY, individually; DALE
WREN, individually; TEXAS AND
SOUTHWESTERN CATTLE
RAISERS ASSOCIATION, a
non-profit corporation; PAUL WADE,
individually; BRYAN COUNTY
BOARD OF COMMISSIONERS, also
known as Board of County
Commissioners of Bryan County,
Oklahoma; PAT VERSTEEG,
individually; BOARD OF COUNTY
COMMISSIONERS OF MARSHALL
COUNTY, OKLAHOMA,

     Defendants-Appellees.

No. 95-7142
(D.C. No. CV-93-856)
(E.D. Okla.)

---

ORDER AND JUDGMENT[*]

---

Before EBEL, HENRY, and MURPHY, Circuit Judges.

---

[*]    This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f) and 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

In 1990, Logan Beard had three horses stolen from his property in Marshall County, Oklahoma. Mike and Johnna Towne found the horses after they strayed onto their property in Bryan County. Johnna Towne informed the Bryan County Sheriff's Department of the discovery of the stray horses. The sheriff's department placed an estray notice in a Bryan County newspaper. The notice was, however, deficient or insufficient under Oklahoma's estray statute. Later that year, Mike Towne sold one of the horses to plaintiffs for $150.00.

On January 28, 1993, Beard contacted plaintiff Charles Reid to advise him that one of the stolen horses might be on his property. That evening, Beard visited plaintiffs' property in Bryan County, inspected the horse plaintiffs had bought from the Townes, and told Reid that it was his horse.

The next day, Beard returned to plaintiffs' property with defendants Dale Wren, the Sheriff of Marshall County; Paul Wade, an investigator for the Southwest Cattlemen's Association; and Bill Hamby, the Undersheriff of Bryan County. The defendants did not have a search warrant. At the locked gate leading to plaintiffs' property, Wade spoke with Reid and allegedly threatened

him with arrest if he did not allow the defendants to take the horse. After this conversation, Reid unlocked the gate. Beard entered the property, caught the horse, loaded it onto his trailer, and the parties left Reid's property.

Plaintiffs thereafter filed this action pursuant to 42 U.S.C. § 1983, alleging violations of their rights under the Fourth and Fourteenth Amendments arising from the warrantless seizure and disposition without hearing of the horse. The district court granted defendants judgment as a matter of law on the Fourteenth Amendment claim. The Fourth Amendment claim was presented to a jury, which reached a verdict in favor of defendants.

I.    Commissioners' Motion to Dismiss

We first consider the motion to dismiss this appeal filed by the County Commissioners of Bryan and Marshall Counties (Commissioners). A party seeking dismissal of an appeal must show that the appeal is not within the jurisdiction of this court. See 10th Cir. R. 27.2.1. The Commissioners argue that we lack jurisdiction over the appeal of the order granting them summary judgment because plaintiffs failed to mention that order in their notice of appeal. An appellant need only identify the final judgment in his notice of appeal to support review of all earlier orders that merge into the final judgment. See Cole v. Ruidoso Mun. Sch., 43 F.3d 1373, 1382 n.7 (10th Cir. 1994). Here, the notice of appeal did identify the final judgment.

The Commissioners also argue that plaintiffs failed to serve them with a copy of the notice of appeal. It is the duty of the clerk of the district court to serve the notice of appeal, not the appealing parties. See Fed. R. App. P. 3(d). Moreover, the clerk's failure to serve a party does not affect the validity of the appeal. See id. Further, the Commissioners have failed to show prejudice from the asserted lack of service. They have had the opportunity to brief the issues on appeal. Cf. MCI Telecommunications Corp. v. Teleconcepts, Inc., 71 F.3d 1086, 1093 (3d Cir. 1995) (although specific orders appealed from were not listed in notice of appeal, appellee was not prejudiced, because it had opportunity to brief issues and did so), cert. denied, 117 S. Ct. 64 (1996). We conclude that the motion to dismiss should be denied.

II. Issues pertaining to plaintiffs' Fourth Amendment claim

Plaintiffs raise a number of interrelated issues targeting the jury verdict on their Fourth Amendment claim. We consider each of these in turn.

A.    Issues involving consent

Plaintiffs challenge the district court's instruction allowing the jury to consider whether they consented to the search and seizure. Plaintiffs contend that there was no evidence of consent to support the giving of this instruction. Plaintiffs have waived this issue. They failed to challenge the instruction in the district court, see Appellants' App., Vol. I at 301-14, and they do not raise plain error on appeal. See, e.g., Palmer v. Krueger, 897 F.2d 1529, 1535 (10th Cir. 1990) (discussing waiver rule).

Plaintiffs do not challenge the substance of the instruction, however; their challenge is to the evidence which supports it. We may, therefore, view their "jury instruction" issue as a de facto challenge to the denial of their Fed. R. Civ. P. 50 motion concerning lack of consent to the search. Cf. Aspen Highlands Skiing Corp. v. Aspen Skiing Co., 738 F.2d 1509, 1517 (10th Cir. 1984) (holding that where defendant raised issue in motion for directed verdict, it preserved opportunity to challenge the sufficiency of evidence as to that issue on appeal, regardless of its failure to object to the jury instructions concerning the issue), aff'd, 472 U.S. 585 (1985).

Plaintiffs have failed to present this court with a complete transcript of the testimony and evidence upon which the district court denied their Rule 50 motion. What is presented, however, allows us to rule against plaintiffs on this issue.

This court reviews de novo the denial of a Rule 50 motion, construing the evidence and inferences most favorably to the non-moving party. See Mitchell v. Maynard, 80 F.3d 1433, 1438 (10th Cir. 1996). Entry of judgment as a matter of law under Rule 50 is only appropriate where "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed. R. Civ. P. 50(a)(1).

A warrantless search of a residence gives rise to a presumption of unreasonableness. However, in a § 1983 civil rights suit where, as here, the defendant has come forward with evidence that the plaintiff consented to the search, the burden then falls upon the plaintiff to prove that no consent was given, or that the consent given was involuntary. See Valance v. Wisel, 110 F.3d 1269, 1278 (7th Cir. 1997). The voluntariness of consent to search is a question of fact.

We have carefully reviewed the evidence presented concerning the circumstances surrounding Mr. Reid's alleged consent to the search and seizure of the horse. While Mr. Reid contends that defendant Wade swore at him, threatened to cut the lock off of his gate, and threatened him with immediate arrest if he did not allow officers to retrieve the horse, defendant Wade's testimony paints a significantly different picture of these events. A reasonable jury could have determined, on the facts presented, that Mr. Reid consented to the

search and seizure. The issue of consent was therefore properly presented to the jury for resolution.

Our decision on the preceding issue also disposes of plaintiffs' argument that the district court should have granted their motion for summary judgment, or their Rule 50 motion, on the basis that the warrantless search and seizure was an "absolute violation" of their constitutional rights. Plaintiffs' challenge to the denial of their motion for summary judgment merges into their challenge to the district court's Rule 50 order. See Whalen v. Unit Rig, Inc., 974 F.2d 1248, 1250-51 (10th Cir. 1992). Both challenges fail, because the jury could reasonably have found that plaintiffs consented to the search.

Finally, plaintiffs take issue with the district court's rejection of their proposed jury instruction that a warrant is required to search and seize. We review the district court's rejection of a particular jury instruction for abuse of discretion. See United States v. Voss, 82 F.3d 1521, 1529 (10th Cir.), cert. denied, 117 S. Ct. 226 (1996). In determining whether the district court properly exercised its discretion, we "examine the instructions as a whole to determine if they sufficiently cover the issues in the case and focus on the facts presented by the evidence." Id. "The question of whether the jury was properly instructed is a question of law," which we review de novo. Id.

The proposed instruction made no mention of consent as an exception to the warrant requirement. By contrast, the district court's instruction incorporated both the general warrant requirement, and correctly informed the jury that a warrant is not required where the individual consents to the search and seizure. Plaintiffs' challenge lacks merit.

B.    "Open field" instruction

Plaintiffs complain that there was insufficient evidence to justify instructing the jury that the paddock from which the horse was seized could be considered an "open field." Although plaintiffs have not supplied this court with a complete transcript, the evidence which is presented allows us to reject this challenge.

In United States v. Dunn, 480 U.S. 294, 301 (1987), the Supreme Court adopted a four-factor analysis for defining the extent of a home's curtilage. This test requires a court to examine "the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by." Id. The instruction given in this case correctly stated this test to the jury.

### 1. Proximity of Area to Home

The parties stipulated to preparation of a survey map detailing the portion of plaintiffs' property at issue here. The survey shows that plaintiffs' trailer home is situated on a long, narrow parcel which is bounded on the east by thick woods and brush, and on the west by a long fence. At the time of the search and seizure, the horse was in a field at least forty yards behind plaintiffs' trailer home. Appellants' App., Vol. I at 198; Appellees' App. at 1. The barn at issue in Dunn was located sixty yards from the home. The Supreme Court stated that, standing in isolation, "this substantial distance supports no inference that the barn should be treated as an adjunct of the house." Dunn, 480 U.S. at 302.

### 2. Inclusion of Area within Enclosure

The long fences shown on the survey are not the sort of fence which "serves to demark a specific area of land immediately adjacent to the house that is readily identifiable as part and parcel of the house." Dunn, 480 U.S. at 302. Plaintiffs claim, however, that a perimeter fence enclosed their house, the barn and the field. Appellees contest this. The survey fails to show the existence of such a fence, and even plaintiffs' trial testimony is to the contrary. See Appellees' App. at 21-22.

The survey does show that the area where the horse was kept was separately fenced-off from the rest of plaintiffs' property. A jury could therefore reasonably

find that the field was a "separate" and "distinct" portion of plaintiffs' ranch. See Dunn, 480 U.S. at 302.

### 3.    Nature of Uses for Area

The field in question appears to have been used primarily for livestock purposes. Mr. Reid testified that he used the area immediately behind his home as a back yard, see Appellants' App., Vol. I at 201; however, we find no evidence that he characterized the fenced-in area in this way. In United States v. Swepston, 987 F.2d 1510, 1515 (10th Cir. 1993), this court stated that raising chickens on a portion of a property was an indication that it "was not being used for intimate activities of the home."

### 4.    Steps Taken to Shield Area from Observation

Plaintiffs argue that they should prevail on this factor, because the field is not visible from a public road. However, topographical invisibility from a public road or adjoining neighbors' property does not equate to curtilage. See id. A barbed-wire fence, designed to corral livestock, does not prevent people from observing what goes on within, and cannot be considered an attempt to shield an area from observation. See Dunn, 480 U.S. at 303.

We conclude, from an analysis of all of the <u>Dunn</u> factors, that the "open field" instruction was properly submitted to the jury. Plaintiffs' challenge to the open field instruction fails.

C.      "Presumed Guilty" Instruction

Plaintiffs claim the district court improperly instructed the jury that if the horse was stolen, they should be "presumed guilty" of concealing stolen property. The instruction actually states that a person who conceals property under circumstances suggesting that he ought to inquire into whether it was stolen can be presumed to know that it is stolen property. This is a correct statement of the law. <u>See</u> Okla. Stat. tit. 21, § 1713(2). Moreover, the instruction was relevant, because if the horse were stolen property, the sheriffs had authority to seize it from the open field behind plaintiffs' home.

D.      Photographic evidence

Plaintiffs contend that the jury should have been allowed to see pictures of the property which they offered into evidence. We review the district court's decisions on whether to admit or reject evidence for abuse of discretion. <u>See</u> <u>Cartier v. Jackson</u>, 59 F.3d 1046, 1048 (10th Cir. 1995). The district court rejected two of the photographs as misleading; they showed thick foliage obscuring the view of the area where the horse was kept that was not there in the

wintertime, when the horse was seized. The other photograph depicted a horse near the house that was not where the horse at issue was recovered. The district court did not abuse its discretion in rejecting the photographs.

E.    Motion in limine

Plaintiffs contend the district court should have granted their motion in limine and excluded all evidence concerning the true ownership of the horse. This issue lacks merit. The jurors considering the Fourth Amendment issue would have been completely misled had they heard that sheriffs' officers came to plaintiffs' house and seized a horse, but were prevented from hearing that the horse did not belong to plaintiffs. Moreover, that the horse was stolen property was relevant to the propriety of its seizure from an open field. The district court did not abuse its discretion in denying the motion in limine.

III.    Issues pertaining to grants of summary judgment to certain parties

A.    County Commissioners

Plaintiffs argue that district court erred in granting summary judgment to the Commissioners, on the basis that they had no authority over the acts of the parties. Municipal liability in § 1983 cases is limited to deprivation of federally protected rights caused by action taken pursuant to official municipal policy. See

Monell v. Department of Social Servs., City of New York, 436 U.S. 658, 691 (1978).

Plaintiffs made no showing that Sheriff Wren or Undersheriff Hamby acted pursuant to an unconstitutional, established county policy in seizing the horse, or that the county had an inadequate training program for sheriffs and their deputies regarding seizures which resulted in the acts complained of here. See Board of County Comm'rs of Bryan County v. Brown, 117 S. Ct. 1382, 1390 (1997). They claim that they could have made such a showing, had they been granted further discovery. However, they failed to file an affidavit concerning their need for further discovery, as required by Fed. R. Civ. P. 56(f).

Plaintiffs also argue that the acts in question here were taken by the Bryan and Marshall county sheriffs as "policymakers" for their respective counties. The record indicates that Bryan County Sheriff Bill Sturch did not participate in the seizure; only Undersheriff Hamby did. A municipality may be held liable for harm caused by the single act of a policymaking officer acting within his authority, if the act "constitutes an act of official government policy." See Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986). Whether an individual is a "policymaker" "is a legal issue which is determined by the court based on state and local law." Randle v. City of Aurora, 69 F.3d 441, 447 (10th Cir. 1995).

We have found no basis in Oklahoma law for concluding that Undersheriff Hamby was a policymaker for Bryan County. However, the same cannot be said for Sheriff Wren. Oklahoma sheriffs are final policymakers concerning law enforcement activities in their counties. See Hollingsworth v. Hill, 110 F.3d 733, 743 (10th Cir. 1997).[1] There is at least a material issue of fact concerning whether Sheriff Wren personally authorized and participated in the events in question. Therefore, the district court erred in granting summary judgment to the County Commissioners of Marshall County.

---

[1] Hollingsworth was decided prior to the United States Supreme Court's recent decision in McMillian v. Monroe County, 117 S. Ct. 1734 (1997). In McMillian, the Supreme Court determined that Alabama sheriffs are not policymakers for the counties in which they act as law enforcement officials, because they are officers of the State of Alabama. See id. at 1738-39. A suit against an Alabama county sheriff in his official capacity is therefore a suit against the state, not the county in which the sheriff operates. See id. The McMillian court recognized, however, that the role of the office of "county sheriff" differs from state to state. See id. at 1741. In Hollingsworth, we relied on the county-specific duties of sheriffs described in Okla. Stat. tit. 19, §§ 514, 516, and 547(A). See Hollingsworth, 110 F.3d at 743. Other facets of the relationship between a sheriff and the county in which he operates, discussed in the next section of this order and judgment, infra, also tend to show that the Oklahoma sheriff is more closely tied to county government than his counterpart in Alabama. We conclude, even under the McMillian standard, that an Oklahoma sheriff is the policymaker for his county for law enforcement purposes.

B.      Marshall and Bryan County "Sheriff's Departments"

Plaintiffs sued the Marshall and Bryan County "Sheriff's Departments." The district court dismissed those defendants on the grounds that no such entities exist for purposes of suit.  See Fed. R. Civ. P. 17(b).

We have found no Oklahoma authority to justify suing a "sheriff's department" under a municipal liability theory.  In Oklahoma, suits against a county are brought against the board of county commissioners.  See Okla. Stat. tit. 19, § 4.  Claims against county officers (such as the county sheriff) are paid from the county treasury.  See id. at § 6; cf. Board of County Comm'rs v. Amarillo Hosp. Dist., 835 S.W.2d 115, 120 (Tex. Ct. App. 1992) (noting that under Oklahoma law, county pays claims against sheriff's department).  The budget for the sheriff's department is part of the county budget, see Okla. Stat. tit. 19, § 1404(11), and his salary is paid by the county, see id. § 180.61.  All these factors lead us to believe that the county, rather than the sheriff's department, is the proper governmental defendant in a § 1983 action.

Plaintiffs cite Winters v. Board of County Commissioners, 4 F.3d 848, 856 (10th Cir. 1993), in which this court indicated by implication that the Osage County, Oklahoma sheriff's department was subject to suit in connection with an unlawful search and seizure.  In Winters, the "proper entity" issue was not

squarely presented as it is here. We now hold that an Oklahoma "sheriff's department" is not a proper entity for purposes of a § 1983 suit.

IV.    Judgment as a Matter of Law on Fourteenth Amendment Claim

Finally, plaintiffs challenge the district court's finding against them, as a matter of law, on their Fourteenth Amendment claim. The court reasoned that plaintiffs had no protected property interest in the stolen horse. Plaintiffs argue that they had a sufficient property right in the horse to require due process protections against its seizure and disposition. See, e.g., Wolfenbarger v. Williams, 774 F.2d 358, 362 (10th Cir. 1985) (holding pawnbroker had interest in stolen property sufficient to warrant due process protection).

Property interests are created by sources independent of the federal Constitution, such as state law. See Board of Regents v. Roth, 408 U.S. 564, 577 (1972). Defendants argue that a purchaser of an estray, whose seller has not complied with the estray statute, acquires no protected interest under Oklahoma law. See Gibson v. Linthieum, 150 P. 908, 908 (Okla. 1915). It is uncontested that Mike Towne, who sold the horse to plaintiffs, did not comply with Oklahoma's estray statutes.

Oklahoma law, however, will not support the concept that plaintiffs had no interest whatsoever in the horse at issue here. In Craighead v. Myers, 293 P. 192 (Okla. 1930), the Oklahoma Supreme Court rejected an argument that the defendants, who possessed a stray cow but had not complied with the estray statutes, had "no interest" in the cow for purposes of appealing from a judgment of replevin:

> The testimony of [appellant] Craighead is to the effect that he did not own the cow, but he did not, in terms, disavow any interest in her. He did have possession of her and that possession might have been valuable; it had continued for 1 1/2 years. Such possession undisturbed, under certain conditions, might have ripened into title.

Id. at 194.

Plaintiffs possessed the horse at issue here for over two years before it was seized. They believed the sheriff had authorized sale of the horse. There was evidence that they paid Mr. Towne $150.00 for it. While plaintiffs admittedly did not have a sufficient interest to prevail against Mr. Beard's rightful interest in the horse, they did have enough interest to invoke due process protections prior to its seizure. See Winters, 4 F.3d at 856 (pawnbroker allowed to present her case for ownership of stolen ring, regardless of likelihood of success, so long as there is a dispute concerning ownership).

The district court erred in granting defendants' Rule 50 motion on the basis that plaintiffs had no interest in the horse which would invoke due process

protections. We must therefore reverse and remand as to this issue. We wish to emphasize, however, that our reversal should not be read as necessarily requiring a further trial. We note that the district court reserved ruling on a number of additional defenses in its order of summary judgment. See Appellant's App., Vol. I at 60, n.5. Defendants may have other pretrial motions to make or defenses to raise.

V. Conclusion

The Commissioners' motion to dismiss appeal is DENIED. The district court's order granting summary judgment to the Marshall County Commissioners, and its judgment as a matter of law on plaintiffs' Fourteenth Amendment claims, are REVERSED. The district court's remaining orders are AFFIRMED, and this matter is REMANDED to the district court for further proceedings in accordance with this order and judgment.

Entered for the Court


David M. Ebel
Circuit Judge

-18-